STATE OF CONNECTICUT *v.* NATHANIEL MCDUFFIE
(AC 17650)

Foti, Schaller and Daly, Js.

Argued September 22—officially released December 8, 1998

*Louis S. Avitabile*, special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, assistant state's attorney, with whom, on the brief, were *Maureen M. Keegan*, acting state's attorney, and *Cara Eschuk*, assistant state's attorney, for the appellant (state).

*Opinion*

SCHALLER, J. The defendant, Nathaniel McDuffie, appeals from the judgment of the trial court revoking his probation and sentencing him to a term of imprisonment. The principal issue on appeal is whether the trial judge was required to recuse himself, sua sponte, from the March 4, 1996 revocation proceeding because he had heard the defendant admit in open court on January 31, 1996, that the defendant had failed two drug tests while on probation. Because the defendant failed to preserve the issue for appeal and because we find no plain error, we affirm the judgment.

In an information dated August 9, 1993, the state charged the defendant with sexual assault in the first degree in violation of General Statutes § 53a-70.[1] The defendant pleaded not guilty and elected a jury trial. On August 5, 1994, the defendant pleaded guilty to the charge of sexual assault under the *Alford* doctrine.[2] The trial court, *Kulawiz, J.*, committed the defendant to the custody of the commissioner of correction for a term of twelve years, execution suspended after sixteen months, and three years of probation with special conditions, primarily sex offender counseling.

On the basis of a warrant affidavit sworn out by the defendant's probation officer, Eduardo Palmieri, stating that the defendant had violated the terms of his probation, the state filed an information dated November 20, 1995, charging the defendant with violation of probation pursuant to General Statutes § 53a-32.[3] The defendant

[1] General Statutes § 53a-70 provides in relevant part: "(a) A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[2] See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). A defendant who pleads guilty under the *Alford* doctrine does not admit guilt, but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea. *State* v. *James*, 197 Conn. 358, 359 n.1, 497 A.2d 402 (1985); *State* v. *Palmer*, 196 Conn. 157, 169 n.3, 491 A.2d 1075 (1985).

[3] General Statutes § 53a-32 provides in relevant part: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. Any such warrant shall authorize all officers named therein to return the defendant to the custody of the court or to any suitable detention facility designated by the court. . . . Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which he is alleged to have violated the conditions of his probation or conditional discharge, shall be advised by

was arrested, and a denial of the charge was entered on December 26, 1995. On the same date, the trial court appointed a public defender for the probation revocation hearing.

On January 31, 1996, the state informed the trial court, *Damiani, J.,* that it had been unable to reach an agreement with the defendant and asked that the case be set down for a probation revocation hearing. The defendant's attorney, when asked if he wanted to be heard, replied that he did not at that time, but indicated that his client wanted to address the court. The defendant then admitted that he had violated the conditions of his probation by using illegal drugs. The defendant stated: "Like I said, I'm guilty of these dirty urines and as a result I'm trying to get help. Day Top [a substance abuse program] has accepted me, willing to take me in that program upon Your Honor granting it." The court then responded: "Mr. McDuffie, you got into the program before you got the dirty urines. I'm not going to put you in a program. You're going to have a hearing on March 4, [1996], okay. You should have gone into the program before you got the dirty urines." This statement by the court is the gravamen of the defendant's claim.

On March 4, 1996, an evidentiary hearing was held before Judge Damiani pursuant to § 53a-32 to determine

the court that he has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in his own behalf.

"(b) If such violation is established, the court may: (1) Continue the sentence of probation or conditional discharge; (2) modify or enlarge the conditions of probation or conditional discharge; (3) extend the period of probation or conditional discharge, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29; or (4) revoke the sentence of probation or conditional discharge. If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence."

whether the defendant had violated the terms of his probation. The trial court heard testimony from Palmieri regarding the defendant's conditions of probation.[4] Palmieri also testified that the defendant missed several appointments with his probation officer, missed appointments at his required sexual offender counseling and had used illegal substances in violation of his probation conditions. The defendant offered no testimony or evidence on his own behalf. On the basis of Palmieri's uncontroverted testimony, the trial court held that the defendant wilfully and intentionally violated the conditions of his probation.

After the trial court found that the defendant had violated the conditions of his probation, defense counsel moved for a continuance to prepare additional information, which the trial court could consider in sentencing the defendant. The trial court initially denied the motion, but then reconsidered. The following colloquy took place between defense counsel and the court:

"[Defense Counsel]: Your Honor, the mere fact that the court has discretion in imposing the sentence on a violation of probation indicates that the legislature anticipated that the court could take into consideration not only the fact that there was a violation, but other information as well. I would like the opportunity to prepare that information so I could present it to the court.

"The Court: . . . Fine, I'll give you time. All I can tell you is that my view is that a person who receives

---

[4] The relevant conditions of the defendant's probation are as follows: "1. Do not violate any criminal law of the United States, this state or any other state or territory. 2. Report as the probation officer directs . . . . 7. Submit to any medical and/or psychological examination, urinalysis, and/or counseling sessions as required by the court and submit to any alcohol and/or drug testing required by the probation officer." Additionally, the trial court entered the special condition that the defendant attend a sex offender treatment program.

a sentence and gets the luxury of going on probation, I'll listen to you, but I can only tell you it's an uphill battle on your part. What date would you like?"

At the sentencing hearing, in addition to arguments from the state and defense counsel, the trial court allowed the defendant to speak on his own behalf. The defendant again admitted that he had violated the conditions of his probation. At the close of arguments, the trial court stated that the defendant was "not amenable to further probation." The trial court then opened and revoked the original sentence, and committed the defendant to the custody of the commissioner of correction for a period of 114 months, approximately 90 percent of the defendant's outstanding sentence.

The defendant claims that the statements by the trial judge during the January 31, 1996 hearing "cast serious doubt on his impartiality [and] that he committed plain error in not recusing himself prior to the revocation hearing." The defendant also claims that the judge violated canon 3 (c) (1) (A)[5] of the Code of Judicial Conduct by not recusing himself. The defendant failed to raise either claim at the hearing.[6] He now seeks review based on the plain error doctrine.[7] We will address the claims together.

---

[5] Canon 3 provides in relevant part: "(c) Disqualification. (1) A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (A) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. . . ."

[6] The defendant does not seek review pursuant to State v. Golding, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). A defendant's failure to request review under Golding precludes us from such review on appeal. State v. Teel, 42 Conn. App. 500, 504, 681 A.2d 974, cert. denied, 239 Conn. 921, 682 A.2d 1012 (1996).

[7] Practice Book § 60-5, formerly § 4061, provides in relevant part: "The court may reverse or modify the decision of the trial court if it determines

Practice Book §§ 1-22 and 1-23, formerly §§ 996 and 997, clearly provide that a motion for recusal shall be made prior to the trial or hearing.[8] "It is well settled that courts will not review a claim of judicial bias on appeal unless that claim was properly presented to the trial court through a motion for disqualification or a motion for mistrial. See *Knock* v. *Knock*, 224 Conn. 776, 792, 621 A.2d 267 (1993); *Gillis* v. *Gillis*, 214 Conn. 336, 343, 572 A.2d 323 (1990); *Cameron* v. *Cameron*, 187 Conn. 163, 168, 444 A.2d 915 (1982). . . . Absent plain error, a claim of judicial bias cannot be reviewed on appeal unless preserved in the trial court. *Cameron* v. *Cameron*, supra, 168." *Small* v. *Stop & Shop Cos.*, 42 Conn. App. 660, 663, 680 A.2d 344 (1996).[9] "To prevail under the plain error doctrine, the defendant must demonstrate that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . This doctrine is not implicated and review of the claimed error is not undertaken unless the error is so obvious that it affects the

that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law.

"The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. *The court may* in the interests of justice notice plain error not brought to the attention of the trial court. . . ." (Emphasis added.)

[8] Practice Book § 1-22, formerly § 996, provides in relevant part: "A judicial authority shall, upon motion of either party or upon its own motion, be disqualified from acting in a matter if such judicial authority is disqualified from acting therein pursuant to Canon 3 (c) of the Code of Judicial Conduct . . . ."

Practice Book § 1-23, formerly § 997, provides in relevant part: "A motion to disqualify a judicial authority shall be in writing and shall be accompanied by an affidavit setting forth the facts relied upon to show the grounds for disqualification . . . . The motion shall be filed *no less than ten days before the time the case is called for trial or hearing* . . . ." (Emphasis added.)

[9] We rely on civil cases for the standard of review of unpreserved claims of judicial bias because our Supreme Court held in *State* v. *Davis*, 229 Conn. 285, 295, 641 A.2d 370 (1994), that a probation revocation hearing is akin to a civil proceeding.

fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Lindstrom*, 46 Conn. App. 810, 817, 702 A.2d 410, cert. denied, 243 Conn. 947, 704 A.2d 802 (1997).

The defendant asserts that the judge's statement at the January 31, 1996 hearing "constituted a prejudgment opinion and decision that he would never at any time consider the sentencing option of continuing the defendant on intensive probation . . . ." "Because the court, rather than a jury, sits as the trier of fact in a probation revocation hearing, 'we presume, absent an affirmative showing to the contrary, that the . . . court can put aside whatever impressions [it] may have about the [defendant] and grant him a fair hearing.' *Fair* v. *Warden*, 211 Conn. 398, 414, 559 A.2d 1094, cert. denied, 493 U.S. 981, 110 S. Ct. 512, 107 L. Ed. 2d 514 (1989)." *State* v. *Strickland*, 42 Conn. App. 768, 776, 682 A.2d 521 (1996), rev'd on other grounds, 243 Conn. 339, 703 A.2d 109 (1997). We decline to review this claim under the plain error doctrine because we conclude that the trial judge's conduct did not affect the fairness or integrity of the proceedings, nor did it result in manifest injustice to the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.