995 P.2d 314

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**John D. GOMES, Defendant–Appellant.**

No. 22377.

Supreme Court of Hawai'i.

March 15, 2000.

As Amended March 23, 2000.

Hayden Aluli, on the briefs, Honolulu, for the defendant-appellant John D. Gomes.

Loren J. Thomas, Deputy Prosecuting Attorney, on the briefs, for the plaintiff-appellee State of Hawai'i.

MOON, C.J., LEVINSON, NAKAYAMA, and RAMIL, JJ., and Circuit Court Judge TOWN, Assigned by Reason of Vacancy.

Opinion of the Court by LEVINSON, J.

The defendant-appellant John D. Gomes appeals from the judgment, guilty conviction, and sentence of the first circuit court, filed on February 9, 1999. On appeal, Gomes argues that the circuit court: (1) plainly erred when the presiding judge failed to recuse himself *sua sponte*; (2) plainly erred in failing to engage Gomes in a colloquy regarding his right to an impartial tribunal; (3) plainly erred in failing to give the jury a unanimity instruction; (4) plainly erred in its instructions regarding third degree assault and self-defense; and (5) erred "cumulatively" such that Gomes was denied a fair trial. We disagree. Accordingly, we affirm the circuit court's judgment.

## I. BACKGROUND

On November 12, 1997, the grand jury returned an indictment against Gomes, charging him with one count of assault in the second degree, in violation of Hawai'i Revised Statutes (HRS) § 707–711(1)(a) (1993).[1] The indictment charged Gomes with having intentionally or knowingly caused substantial bodily injury to Erich Bohne.

Prior to trial, the following colloquy transpired:

JUDGE JOHN LIM: ... Before we start, I've discussed this with counsel in chambers. I have had contact with Mr. Gomes just briefly. I was surfing M[ā]kaha early one morning. I was basically alone and then Mr. Gomes paddled out, and I kind of got in his way a couple times, minor times.

I think he got a little bit upset. He did start to berate me; I apologized, but the berating continued.

I think even Mr. Gomes will admit that there was an [ai]r of physical menace there. But after things calmed down, he kind of paddled off and sat by himself. Seemed to be beating himself a little bit inside.

And he did apologize, come over, shake my hand, and we had a nice conversation after that. That was my only contact with Mr. Gomes. It's quite ambivalent, and I can assure counsel and Mr. Gomes that I bear no grudge. I have no opinion, no impression, and I can be fair and impartial.

Acknowledging, Mr. Gomes, that if you lose this trial, I'll be sentencing you, you understand that?

[Gomes]: Yes.

JUDGE LIM: Okay. And so if there's any motion for recusal, I'll entertain it now.

[Deputy Public Defender (DPD)]: Your Honor, there's no motion, Your Honor.

JUDGE LIM: You sure, Mr. Gomes?

[Gomes]: Yes.

At Gomes's two-day trial, beginning on August 26, 1998, Bohne testified as follows. On March 23, 1997, both Bohne and Gomes were surfing at Chun's Reef in Hale'iwa. Gomes was knocked off of his surfboard, as a result of which he lost the board. Gomes swam up to Bohne, and said, "Get off your board. I'm taking your board." Feeling intimidated, Bohne gave Gomes his board. Gomes paddled out on Bohne's board and retrieved his lost board.

---

1. HRS § 707–711(1)(a) provides in relevant part that "[a] person commits the offense of assault in the second degree if ... [t]he person intentionally or knowingly causes substantial bodily injury to another[.]" HRS § 707–700 (1993) defines "substantial bodily injury" in relevant part as "bodily injury which causes: ... [a] bone fracture[.]"

Gomes returned Bohne's board to him and said, "Be glad I brought your board back." Bohne responded, "That wasn't too cool[,] what you just did." Gomes answered, "Oh yeah? You want to do something about it?" Bohne attempted to ignore Gomes's repeated invitations to fight. Gomes paddled up alongside Bohne and punched him in the nose. Bohne felt blood running from his nose, and his eyes began to tear. Bohne paddled to shore, and Gomes paddled in alongside him.

Once on the beach, Bohne said that he was going to call the police. Bohne and Gomes had an argument, and then the two simultaneously began a "wrestling match." Another surfer broke up the fight. Bohne returned home and telephoned the police.

Dr. Robert J. Brumblay, an emergency physician practicing at Wahiawa General Hospital, testified that he treated Bohne on March 23, 1997. Bohne presented a broken nose, bruises, and a concussion. Dr. Brumblay testified that the broken nose was consistent with being punched in the face with a fist.

Gomes testified that, following his verbal altercation with Bohne in the water, he did strike Bohne without provocation. Gomes stated that he did so because he thought Bohne was going to strike him and he wanted to avoid a fight.

In its rebuttal argument, the prosecution stated:

[Deputy Prosecuting Attorney (DPA)]: ... They say, well, it was only one hit. *One hit did the job.* As soon as [Bohne] was hit, his nose was bleeding. His eyes were tearing up....

 ....

So when they are wrestling on the beach, yeah, we are talking about at that point maybe it is mutual. *But we are not talking about this. We are talking about out on the water* when [Bohne] is doing everything he can to avoid the situation, to try and get out of it, and [Gomes] won't let him. Basically [Gomes] owns the waves, he can do what he wants, what are you going to do about it? That's what happened, ladies and gentlemen in this case,

and we ask that you come back with a verdict of guilty as charged to Assault in the Second Degree.

(Emphases added).

The jury was instructed as to the elements of the included offense of third degree assault as follows:

There are three material elements of the offense of Assault in the Third Degree, each of which the prosecution must prove beyond a reasonable doubt:

These three elements are:

1. That, on or about March 23, 1997, in the City and County of Honolulu, State of Hawai['']i, [Gomes] caused bodily injury to Erich Bohne; and

2. That [Gomes] did so intentionally, knowingly[,] or recklessly; and

3. That [Gomes] did so without justification; in other words, that [Gomes] did not do so in self-defense.

The prosecution objected to the above instruction, and Gomes responded as follows:

[Deputy Public Defender (DPD)]:.... I believe that it should be included just for the fact that it just makes it easier for the jury to follow. They have to find that the State proved it beyond a reasonable doubt just like ... the two elements that [are] originally there, and if it makes it easier on the jury, I think it should be included.

The circuit court further instructed the jury as follows:

Justifiable use of force, commonly known as *self-defense, is a defense to the ... included offense of assault in the third degree.* The burden is on the prosecution to prove beyond a reasonable doubt that the force used by [Gomes] was not justifiable. If the prosecution does not meet its burden, then you must find [Gomes] not guilty.

 ....

.... If and only if you find that [Gomes] was reckless in having a belie[f] that he was justified in using self-protective force against another person or that [he] was reckless in acquiring or failing to acquire any knowledge or belief which was material to the justifiability of his use of force

against the other person, then the use of such self-protective force is unavailable as a defense to the offense of assault in the third degree based on a reckless state of mind.

(Emphasis added).

The jury found Gomes guilty of the charged offense on August 27, 1998. At Gomes's sentencing hearing, the circuit court stated, *inter alia:*

> THE COURT: Usually, Mr. Gomes, this kind of crime deserves some prison. If you had a worse record, it would be five years. This kind of record, at least six months to a year; and that's the gravity of the situation. And the denial of responsibility in the letter to the Court is disturbing and would have in any other case gotten one year jail term as a term and condition of probation. Yes, sir.
>
> . . . .
>
> ... Because I mean it's not any part of my sentencing, but I'm concerned, you know. I mean your remorse at this sentencing[,] I'm kind of concerned because I heard during this winter system you beat up a guy in the bathroom at [P]ipe. So there's still a lot to be done, Mr. Gomes, no matter what you told me today at sentencing. I know. I surf. I see you out in the water couple times already. So if I hear about any[ ]more of these incidents, I will personally tell the probation officer to revoke. So like I said, I hope this is a benefit to you. You understand the terms and conditions of your probation?

On February 9, 1999, the circuit court entered its judgment, guilty conviction, and sentence. The circuit court ordered Gomes to five years of probation.[2] Gomes was also ordered to pay restitution in the amount of $1,327.96 and a fine in the amount of $5,000. The time for appeal was extended. Gomes entered a timely notice of appeal on March 24, 1999.

---

**2.** As a special condition of his probation, Gomes was ordered to "[i]nitiate, arrange, and carry out a presentation, open to all students, in each and every intermediate, middle[,] and high school in

## II. *STANDARDS OF REVIEW*

### A. *Failure To Recuse*

 This court has yet to articulate the appropriate standard of review for a judge's failure to *sua sponte* recuse himself or herself. Although points of error not raised before the trial court will ordinarily be disregarded on appeal, we may notice plain error. *See State v. Pulse,* 83 Hawai'i 229, 238–39, 925 P.2d 797, 806–07 (1996) (citing *State v. Schroeder,* 76 Hawai'i 517, 532, 880 P.2d 192, 207 (1994) (citation omitted)); *see also* Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4)(D) (1994) (appellate courts may notice plain error even if not presented as a point of error on appeal).

 The Code of Judicial Conduct (Revised) (1992) (CJC) offers guidelines for the conduct of judges that relate to the disqualification of a judge. Canon 3(E)(1) of the CJC provides in pertinent part that "[a] judge *shall* disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where ... the judge has a personal bias or prejudice concerning a party[.]" (Emphasis added.) Inasmuch as judges are encouraged to recuse *themselves* where there might be an appearance of impropriety, failure to move for recusal at the trial level cannot entirely preclude a party's raising the issue on appeal. *See, e.g., United States v. Barrett,* 111 F.3d 947, 954–55 (D.C.Cir.) (Tatel, J., concurring) (observing that "[f]ailure to move for recusal may lower the standard of appellate review ... but ... such failure cannot entirely bar appellate review of a judge's exercise of ... statutory duty"), *cert. denied,* 522 U.S. 867, 118 S.Ct. 176, 139 L.Ed.2d 117 (1997); *United States v. Bosch,* 951 F.2d 1546, 1548 (9th Cir.1991). However, a party who has made no motion for recusal in the trial court bears the burden on appeal in demonstrating that the judge committed plain error in failing to recused himself or herself. *See, e.g., Bosch* (holding that, where appellant failed to move for recusal, trial court judge's failure to re-

---

the State of Hawaii's public school system" on the topic: "There is no place for violence, physical intimidation or threats in the sport of surfing."

cuse reviewed for plain error); *United States v. Schreiber*, 599 F.2d 534, 535–36 (3d Cir. 1979) (applying plain error standard of review when recusal issue is first raised on appeal); *State v. McDuffie*, 51 Conn.App. 210, 721 A.2d 142, 145 (1998) (noting that, where there is no motion for recusal, standard of review for judge's failure to recuse is plain error), *cert. denied*, 247 Conn. 958, 723 A.2d 814 (1999); *Stevenson v. State*, 709 A.2d 619, 635 (Del.) (reviewing for plain error argument that judge should have recused himself where there was no motion for recusal), *cert. denied*, 525 U.S. 967, 119 S.Ct. 414, 142 L.Ed.2d 337 (1998); *People v. Taylor*, 288 Ill.App.3d 21, 223 Ill.Dec. 396, 679 N.E.2d 847, 851 (same), *cert. denied*, 174 Ill.2d 589, 227 Ill.Dec. 15, 686 N.E.2d 1171 (1997); *cf. State v. Foster*, 854 S.W.2d 1, 7 (Mo.Ct.App.1993) (refusing to entertain claim that judge should have recused himself *sua sponte*, noting that, "[i]f a defendant elects not to disqualify a judge and the strategy goes awry[,] he may not then claim 'plain error' because the judge did not *sua sponte* remove himself").

### B. *Jury Instructions*

 " 'When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading,' " *State v. Kinnane*, 79 Hawai'i 46, 49, 897 P.2d 973, 976 (1995) (quoting *State v. Kelekolio*, 74 Haw. 479, 514–15, 849 P.2d 58, 74 (1993) (citations omitted)). . . . *See also State v. Hoey*, 77 Hawai'i 17, 38, 881 P.2d 504, 525 (1994).

" '[E]rroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.' " *State v. Pinero*, 70 Haw. 509, 527, 778 P.2d 704, 716 (1989) . . . (quoting *Turner v. Willis*, 59 Haw. 319, 326, 582 P.2d 710, 715 (1978)).

[E]rror is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be

entitled. In that context, the real question becomes whether there is a reasonable possibility that error may have contributed to conviction.

*State v. Heard*, 64 Haw. 193, 194, 638 P.2d 307, 308 (1981) (citations omitted). If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside. *See Yates v. Evatt*, 500 U.S. 391, 402–03 [111 S.Ct. 1884, 114 L.Ed.2d 432] . . . (1991)[.]

[*State v.*] *Arceo*, 84 Hawai'i [1,] 11–12, 928 P.2d [843,] 853–54 [ (1996) ] (quoting *State v. Holbron*, 80 Hawai'i 27, 32, 904 P.2d 912, 917, *reconsideration denied*, 80 Hawai'i 187, 907 P.2d 773 (1995) (some citations omitted) (brackets in original) (emphasis deleted)); *see also State v. Loa*, 83 Hawai'i 335, 350, 926 P.2d 1258, 1273 (1996); *State v. Robinson*, 82 Hawai'i 304, 310–11, 922 P.2d 358, 364–65 (1996).

*State v. Cabrera*, 90 Hawai'i 359, 364–65, 978 P.2d 797, 802–03 (1999) (quoting *State v. Maumalanga*, 90 Hawai'i 58, 62–63, 976 P.2d 372, 376–77 (1998) (quoting *State v. Cullen*, 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997))) (brackets and ellipsis points in original).

### C. *Plain Error*

 "We may recognize plain error when the error committed affects substantial rights of the defendant." . . . *Cullen*, 86 Hawai'i [at] 8, 946 P.2d [at] 962 . . . (citations and internal quotation signals omitted). *See also* Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) (1993) ("Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

*State v. Staley*, 91 Hawai'i 275, 282, 982 P.2d 904, 911 (1999) (quoting *Maumalanga*, 90 Hawai'i at 63, 976 P.2d at 377 (citation omitted)).

### D. *Constitutional Law*

 . . . We answer questions of constitutional law "by exercising our own independent judgment based on the facts of

the case." *State v. Trainor*, 83 Hawai'i 250, 255, 925 P.2d 818, 823 (1996) (citations and internal quotation marks omitted); *State v. Lee*, 83 Hawai'i 267, 273, 925 P.2d 1091, 1097 (1996) (citation, internal quotation marks, and brackets omitted). Thus, we review questions of constitutional law under the "right/wrong" standard. *See State v. Toyomura*, 80 Hawai'i 8, 15, 904 P.2d 893, 900 (1995) (citing *State v. Higa*, 79 Hawai'i 1, 3, 897 P.2d 928, 930 (1995), and *State v. Gaylord*, 78 Hawai'i 127, 137, 890 P.2d 1167, 1177 (1995)); *State v. Baranco*, 77 Hawai'i 351, 355, 884 P.2d 729, 733 (1994) (issue whether defendant's constitutional right against double jeopardy would be violated unless indictment dismissed is question of law, reviewed under right/wrong standard); *In re [John] Doe, Born on January 5, 1976*, 76 Hawai'i 85, 93, 869 P.2d 1304, 1312 (1994) (whether speech is protected by first amendment to United States Constitution is applied to states through fourteenth amendment and by article I, section 4 of Hawai'i Constitution are questions freely reviewable on appeal).

*State v. Carvalho*, 90 Hawai'i 280, 285, 978 P.2d 718, 723 (1999) (quoting *State v. Quitog*, 85 Hawai'i 128, 139, 938 P.2d 559, 570 (1997) (quoting *Arceo*, 84 Hawai'i at 11, 928 P.2d at 853)).

## III. *DISCUSSION*

### A. *The Failure Of The Circuit Court Judge To Recuse Himself Sua Sponte Did Not Constitute Plain Error.*

Gomes argues that "the trial [judge] should have recused [him]self, *sua sponte*, based on an appearance of impropriety." Inasmuch· as Judge Lim's failure to recuse himself *sua sponte* did not affect Gomes's substantial rights, Gomes's argument is without merit.

This court does not recognize plain error unless the defendant's substantial rights have been affected. *See Staley*, 91 Hawai'i at 282, 982 P.2d at 911. In the present matter, Gomes does not point to any way in which his substantial rights were affected by Judge Lim's failure to recuse himself. Gomes concedes that Judge Lim was not statutorily obligated to recuse himself pursuant to HRS § 601–7 (1993).[3] Gomes does not argue that Judge Lim was biased or partial. Rather, citing *State v. Ross*, 89 Hawai'i 371, 377, 974 P.2d 11, 17 (1998), Gomes alleges that Judge Lim's failure to recuse himself resulted in a reversible "appearance of impropriety." However, "if a judge proceeds in a case when there is (only) an appearance of impropriety in his doing so, the injury is to the judicial system as a whole and not to the substantial rights of the parties." *United States v. Troxell*, 887 F.2d 830, 833 (7th Cir.1989) (citing *United States v. Murphy*, 768 F.2d 1518, 1539 (7th Cir.1985)); *see also People v. McLain*, 226 Ill.App.3d 892, 168 Ill.Dec. 716, 589 N.E.2d 1116, 1125 (1992) (noting that appearance of impropriety alone does not affect substantial rights warranting reversal); *Opher v. State*, 68 Md. App. 491, 513 A.2d 939, 942 (1986) (noting that, "[e]ven where there is an appearance of impropriety ... [,] reversal is not required unless substantial rights of the defendant are actually affected").

The record does not reveal anything that would suggest that Judge Lim behaved, ruled, or acted unfavorably towards Gomes at trial.[4] In light of Gomes's history and the available penalties—a class C felony, of which second degree assault is one, carries with it a maximum term of five years' impris-

---

3. HRS § 601–7 provides in relevant part:
 **Disqualification of judge; relationship, pecuniary interest, previous judgment, bias or prejudice.** (a) No person shall sit as a judge in any case in which the judge's relative by affinity or consanguinity within the third degree is counsel, or interested either as a plaintiff or defendant, or in the issue of which the judge has, either directly or through such relative, any pecuniary interest; nor shall any person sit as a judge in any case in which the judge has been of counsel or on an appeal from any decision or judgment rendered by the judge....

4. Indeed, we applaud Judge Lim's *sua sponte* disclosure, prior to trial, of his relationship with Gomes. The integrity of the judiciary is well served by trial court judges who, prior to trial, reveal information that might create an appearance of impropriety where the parties or their attorneys would not necessarily have access to such information.

onment, *see* HRS § 706–660(2) (1993)— Gomes's probation sentence is relatively light. Accordingly, there is no evidence that Judge Lim's failure to recuse himself affected Gomes's substantial rights.[5] The circuit court, therefore, did not plainly err in failing to recuse itself *sua sponte.*

B. *The Circuit Court Did Not Plainly Err In Failing To Engage Gomes In A Pretrial Colloquy Regarding His Right To A Fair Trial.*

 Gomes contends that, *"even if the trial court had no duty to recuse itself,* the trial court committed plain error by not engaging ... Gomes in a colloquy to determine whether he knowingly and intelligently waived his right to challenge the fairness of the tribunal." (Emphasis added.) Gomes claims that the circuit court's error deprived him of a fundamental constitutional right. Gomes's argument is nonsensical. If, as Gomes posits, the trial court judge did *not* have a duty to recuse himself, there does not appear to be any question regarding the fairness of the tribunal. Gomes does not point to, and we have been unable to find,

any constitutional requirement that a trial court have a colloquy with every defendant regarding the general fairness of a tribunal.

In a similar vein, Gomes argues that Judge Lim was obligated to engage Gomes himself in a colloquy regarding Gomes's constitutional "right to ask that judge Lim recuse himself." Again, Gomes does not point to, and we have been unable to find, any case law that suggests that a defendant has a constitutional right to engage in a colloquy with a judge about the possibility of that judge's recusal. Indeed, whether to file trial motions, including a motion to recuse, is a strategic decision within the purview of *trial counsel* rather than a decision to be made by the defendant. *See supra* note 4. Accordingly, the circuit court did not plainly err in failing to engage Gomes in a pre-trial colloquy regarding Gomes's right to a fair tribunal.

C. *The Circuit Court Did Not Plainly Err In Failing To Give A Unanimity Instruction To The Jury.*

Gomes argues that "the trial court committed plain error by failing to give a specific

---

5. Furthermore, whether to file a motion to disqualify a judge is a strategic decision that is generally left to defense counsel.

The ABA Defense Function Standards provide useful guidance in determining which decisions must be made by the defendant and which decisions are the province of counsel:

**Standard 4–5.2 Control and Direction of the Case**

(a) Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel include:

(i) what pleas to enter;

(ii) whether to accept a plea agreement;

(iii) whether to waive a jury trial;

(iv) whether to testify in his or her own behalf; and

(v) whether to appeal.

(b) Strategic and tactical decisions should be made by defense counsel after consultation with the client where feasible and appropriate. Such decisions include what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, *what trial motions should be made,* and what evidence should be introduced.

American Bar Association, *Standards for Criminal Justice—Prosecution Function and Defense Function,* Standard 4–5.2 (3d ed.1993) [hereinafter ABA Defense Function Standards ].

*State v. Richie,* 88 Hawai'i 19, 39, 960 P.2d 1227, 1247 (1998) (emphasis added). Thus, whether to file trial motions—including a motion to recuse — is generally a strategic decision for defense counsel. This court has held, in the context of an ineffective assistance of counsel claim, that "matters presumably within the judgment of counsel, like *trial strategy,* 'will rarely be second-guessed by judicial hindsight.'" *Richie,* 88 Hawai'i at 39–40, 960 P.2d at 1247–48 (quoting *State v. Smith,* 68 Haw. 304, 311, 712 P.2d 496, 501 (1986) (quoting *State v. El'Ayache,* 62 Haw. 646, 649, 618 P.2d 1142, 1144 (1980))) (emphasis in original).

In the present matter, Judge Lim expressly offered both Gomes and his counsel the opportunity to interpose a motion to recuse. Gomes and his counsel declined to do so. We will not second-guess that strategy on appeal. *Cf. Barrett,* 111 F.3d at 951 (noting that "[m]ore than one court has recognized the sensible principle that '[a] defendant cannot take his chances with a judge and then, if he thinks that the sentence is too severe, secure a disqualification and a hearing before another judge' ") (quoting *United States v. Owens,* 902 F.2d 1154, 1156 (4th Cir. 1990) (quoting *Taylor v. United States,* 179 F.2d 640, 642 (9th Cir.1950))) (some brackets added and some in original).

unanimity instruction based on the evidence that was presented at trial." Given controlling Hawai'i precedent, Gomes's argument is unpersuasive.

 This court has held that,

> when separate and distinct culpable acts are subsumed within a single count . . .—any one of which could support a conviction thereunder—and the defendant is ultimately convicted by a jury of the charged offense, the defendant's constitutional right to a unanimous verdict is violated unless one or both of the following occurs: (1) at or before the close of its case-in-chief, the prosecution is required to elect the specific act upon which it is relying to establish the "conduct" element of the charged offense; or (2) the trial court gives the jury a specific unanimity instruction, *i.e.*, an instruction that advises the jury that all twelve of its members must agree that the same underlying criminal act has been proven beyond a reasonable doubt.

*Arceo*, 84 Hawai'i at 32–33, 928 P.2d at 874–75.

Gomes is correct that there are two episodes in the present case that could be deemed "separate and distinct culpable acts." Gomes first struck Bohne while they both were in the water. A second altercation began once Gomes and Bohne reached the beach.

 The record reflects, however, that the prosecution effectively made an election regarding the specific conduct upon which it was relying to establish the assault charge. The only mention of substantial bodily injury—Bohne's broken nose—was made in regard to the altercation in the water. No attempt was made at trial to demonstrate that Gomes caused Bohne substantial bodily injury while they were wrestling on the beach. Indeed, in its rebuttal to Gomes's closing argument, the prosecution expressly stated that the two men were in the water when Gomes punched Bohne in the face and broke his nose. The prosecution observed that "[o]ne hit did the job" and that "we are

not talking about [the wrestling on the beach,] [w]e are talking about out on the water[.]" *See supra* section I. The prosecution made *no* effort to develop the facts necessary to establish a violation of HRS § 707–711(1)(a) with regard to the wrestling on the beach. Accordingly, we hold that the prosecution effectively made an election, in substantial satisfaction of the requirements set out in *Arceo*. *Cf. Maumalanga*, 90 Hawai'i at 64, 976 P.2d at 378 (where no effort made by the prosecution to develop facts necessary to establish violation of relevant charge with regard to one of two distinct culpable acts, prosecution effectively made an election for *Arceo* purposes). Inasmuch as the prosecution satisfied the requirements of *Arceo*, the circuit court did not plainly err in failing to give a specific unanimity instruction.

D. *The Jury Instructions Regarding Third Degree Assault And Self-Defense Did Not Constitute Plain Error.*

Gomes argues that "the trial court committed plain error by instructing the jury that self-protection was a material element of assault in the third degree,[6] while[,] at the same time, instructing the jury that self-defense was unavailable as a defense if . . . Gomes'[s] state of mind was 'reckless.'" Specifically, Gomes argues that the instructions as given were confusing, inasmuch as "[a] reasonable juror may have concluded that self-protection would never be available to a charge of assault in the third degree." We disagree.

 Gomes's counsel acquiesced to the instructions regarding self-defense and third degree assault—indeed, he argued that the inclusion of the absence of self-defense as a material element of third degree assault would "make[ ] it easier for the jury to follow." However,

> it is the *duty of the circuit judge* to see to it that the case goes to the jury in a clear and intelligent manner, so that they may have a clear and correct understanding of what it is they are to decide, and he or she

---

6. Although acting without justification is not technically a "material element" of third degree assault, Gomes does not argue the point.

shall state to them fully the law applicable to the facts.... In other words, the ultimate responsibility properly to instruct the jury lies with the circuit court and *not* with trial counsel.

*State v. Timoteo,* 87 Hawai'i 108, 124–25, 952 P.2d 865, 881–82 (1997) (quoting *State v. Kupau,* 76 Hawai'i 387, 395, 879 P.2d 492, 500 (1994) (quoting *Briones v. State,* 74 Haw. 442, 472–73, 848 P.2d 966, 980 (1993) (Levinson, J., concurring))) (emphases in original).

■ In the present matter, the circuit court expressly instructed the jury that "self-defense[ ] *is* a defense to the ... included offense of assault in the third degree." (Emphasis added.) Accordingly, a reasonable juror would not have concluded, as Gomes suggests, that self-defense is *never* a defense to a charge of third degree assault. Furthermore, the circuit court instructed the jury as to (1) the elements of third degree assault and (2) the definition and applicability of the doctrine of self-defense. As such, when "read and considered as a whole," we hold that the circuit court's instructions were not "prejudicially insufficient, erroneous, inconsistent, or misleading." *Cabrera,* 90 Hawai'i at 364, 978 P.2d at 802.

E. *The Circuit Court Did Not Err Cumulatively Such That Gomes Was Deprived Of A Fair Trial.*

Gomes argues that the cumulative effect of the alleged errors discussed *supra* deprived him of a fair trial. However, "[a]fter carefully reviewing the record, we conclude that the individual errors raised by [Gomes] are by themselves insubstantial. Thus, it is unnecessary to address the cumulative effect of these 'alleged errors.'" *State v. Samuel,* 74 Haw. 141, 160, 838 P.2d 1374, 1383 (1992); *see also Pulse,* 83 Hawai'i at 244, 925 P.2d at 812.

## IV. *CONCLUSION*

Based on the foregoing analysis, we affirm the judgment of the circuit court.