59 P.3d 949

STATE of Hawai'i, Plaintiff–Appellee,

v.

Arthur Corla LOCQUIAO,
Defendant–Appellant.

No. 23706.

Intermediate Court of Appeals of Hawai'i.

July 30, 2002.

As Amended Aug. 14, 2002.

Certiorari Granted Sept. 5, 2002.

Edwin Lauder Baker, on the briefs, Honolulu, for Defendant–Appellant.

Alexa D.M. Fujise, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff–Appellee.

BURNS, C.J., WATANABE and LIM, JJ.

Opinion of the Court by BURNS, C.J.

Defendant–Appellant Arthur Corla Locquiao (Locquiao) appeals from the July 14, 2000 Judgment of the First Circuit Court, entered by Circuit Court Judge Victoria S. Marks, convicting Locquiao as charged. The February 3, 2000 Indictment charged Locquiao with having committed the following two offenses on January 19, 1999: Count I, Promoting a Dangerous Drug in the Third Degree, Hawaii Revised Statutes (HRS) § 712–1243 (Supp.2001), and Count II, Unlawful Use of Drug Paraphernalia, HRS § 329–43.5(a) (1993). We affirm.

## BACKGROUND

In an October 4, 1996 plea agreement (Plea Agreement) to a charge of Promoting a Dangerous Drug in the First Degree on September 26, 1996, Young Soo Kim (Kim), the witness in this case, agreed, in relevant part, to the following:

1. A complete, truthful, up-front debriefing by member(s) of the Prosecuting Attorney, City and County of Honolulu, State of Hawaii, and/or the Honolulu Police Department concerning [Kim's] total knowledge, whether solicited or not, of those persons who are/were involved in narcotics trafficking in Hawaii and elsewhere.

. . . .

2. That [Kim] will actively assist the Honolulu Police Department and the Department of the Prosecuting Attorney, City and County of Honolulu, State of Hawaii, in any investigation and keep in contact with Honolulu Police Officers Michael Rehfeldt and Scott Yamamoto. . . .

3. That [Kim] agrees to be available at any and all briefing(s), trial(s), hearing(s) and/or proceeding(s) which are connected to those cases involving his total knowledge of criminal activity. . . .

. . . .

8. That [Kim] agrees *not to commit any crime or crimes* during the pendency of this Agreement other than those . . . which are expressly assented to by the Honolulu Police Department and the Department of the Prosecuting Attorney[.]

(Emphasis in original.)

In January 1999, Kim owned Kalihi Cue, a business with five pool tables, about twenty pinball machines, and no food service. The restroom at Kalihi Cue was a small open room, with one sink, one urinal, and one toilet. It was to be used by one person at a time.

Kim testified that prior to January 19, 1999, because Locquiao had caused problems by using the Kalihi Cue restroom for lengthy periods of time, Kim had instructed Locquiao not to return to Kalihi Cue. On January 19, 1999, Kim saw Locquiao enter the men's restroom at Kalihi Cue. Kim saw that no one went into the restroom with Locquiao and no one left the restroom after Locquiao entered it. Kim followed Locquiao to the restroom, noted that the door of the restroom was locked, knocked on the door, and instructed Locquiao to "open the door and come out." When Locquiao opened the door, Kim saw that only Locquiao was in the room and that Locquiao was trying to hide something in his pocket. Kim pulled Locquiao's hand out of Locquiao's pocket. Kim saw that Locquiao was holding a glass pipe in that hand. Kim took the pipe from Locquiao and noted that the pipe was hot. The police were then called.

Alleging that the items had been obtained from warrantless searches and seizures of Locquiao's person in violation of his state and federal constitutional rights, Locquiao, on May 22, 2000, moved for an order suppressing evidence of a

clear glass cylindrical pipe with one end shaped into a ball shape and a hole in mid portion of ball, containing a frosty white substance along the inner walls and a small, clear piece of plastic in the long cylindrical opening recovered by Young Soo Kim on January 19, 1999 at the Kalihi Cue, 951 S. King St.

This motion was heard on June 2 and 26, 2000, and orally denied on June 26, 2000. The document containing the written findings, conclusions, and order denying the motion was filed on July 17, 2000.

On June 29, 2000, the jury found Locquiao guilty as charged. The July 14, 2000 Judgment sentenced Locquiao on Count I to an indeterminate five-year term of incarceration with a mandatory minimum of two years, and on Count II to an indeterminate five-year term of incarceration, each sentence to run concurrently with each other and with other sentences.

## DISCUSSION

### A.

In his first point on appeal, Locquiao states that

Young Soo Kim, the witness who seized Mr. Locquiao, searched him for the contraband which led to the instant charges, and held him until the place [sic] came, was a confidential informant for the police and acted as an agent of the police, thereby rendering him subject to the limitations imposed by [the] Fourth Amendment to the United States Constitution and Article I, Section 7 of the Hawai'i State Constitution.

After argument by counsel, the court below orally denied the motion, ruling that while Kim was an informant for the government, he acted on this occasion as a private citizen because this matter was outside the scope of his contract, he did not act at the instruction of the government, he did not mention his "handler's" name to responding officers, and the "handler" found out about the incident only afterwards.

Locquiao contends that the court's ruling

was error because at the time of Mr. Locquiao's arrest, Kim was still bound to the terms of the agreement which required him to provide total knowledge, whether solicited or not, and to actively assist the police. The agreement imposed on Kim the burden to act as [Honolulu Police Department (HPD) ]'s eyes and ears and to tell the police everything he saw and heard. Coupled with the fact that his plea agreement would be revoked for drug activity in Kalihi Cue, Kim was required to seek out drug offenses, to detain the offenders, and to report them to the police. It was that mandate which made Kim an agent of the police, and bound by the same constitutional limitations, when he searched and detained Mr. Locquiao.

■ This point lacks merit because Locquiao's factual assertions are not supported by the record. The Plea Agreement did not require Kim "to act as HPD's eyes and ears and to tell the police everything he saw and heard." Similarly, although in the Plea Agreement Kim agreed *"not to commit any crime or crimes* during the pendency of this Agreement other than those … which are expressly assented to by the Honolulu Police Department and the Department of the Prosecuting Attorney[,]" (emphasis in original) it was nowhere stated "that his plea agreement would be revoked for drug activity in Kalihi Cue," or that "Kim was required to seek out drug offenses, to detain the offenders, and to report them to the police."

Thus, we agree with the following decisions by the circuit court:

65. Mr. Kim's actions on January 19, 1999, were outside the scope of his contract with the government.

. . . .

67. Although Mr. Kim may have been recruited previously by HPD, here he was acting as a private citizen, in his own business establishment, and not as an arm of the government.

### B.

Plaintiff–Appellee State of Hawai'i (the State) sought to introduce evidence that on two occasions prior to January 19, 1999, Loc-

quiao was found in the restroom at Kalihi Cue. The second time led to his being instructed not to return to the premises. Locquiao denied the occurrence of these events. The court granted the State's motion to introduce the evidence and denied Locquiao's motion to exclude the evidence. Locquiao contends that this evidence "was not necessary to establish a fact of consequence to determination of the action and was substantially more prejudicial than probative ... because it tended to suggest that Mr. Locquiao had used drugs in the bathroom previously and ... invited the jury to conclude that he had done so on the present occasion as well." Locquiao contends that "[i]t would have sufficed to tell the jury that Mr. Locquiao had entered Kalihi Cue, had gone straight to the bathroom without making eye contact with Kim, and that Kim went to the bathroom to evict Mr. Locquiao because it was for use only by customers."

 The standard of review of a trial court's decision to admit or exclude evidence after weighing its probative value against its prejudicial effect is the abuse of discretion standard. *State v. Rabe*, 5 Haw.App. 251, 687 P.2d 554 (1984). In this instance, we conclude that the trial court did not abuse its discretion. It was reasonable to permit the State to present evidence to explain to the jury why Kim went to the bathroom and did what the evidence shows that he did.

### C.

In Locquiao's alleged statement to the police, an audiotape of which was played for the jury, the speaker stated that a man asked the speaker to come into the bathroom with him to talk, and they were in the bathroom for about two minutes. The speaker further stated, in relevant part, as follows:

A. Yeah, he went out and then I locking the door. And he passed me that pipe in my left pocket. I put 'em in my left pocket. About ten seconds someone is opening the door. I thought it was him.

. . . .

Q. What was it?

A. It is a pipe.

Q. What kind of pipe?

A. It's a ice pipe.

Q. And ... when you say "ice," what do you mean?

. . . .

Q. Meth? Methamphetamine? What they call batu?

A. That's what—that's what it is I think.

. . . .

Q. The illegal drug that the people smoke?

A. All of those guys over there. Not me, see[.]

. . . .

A. . . . . I don't know why after he smoked he try to come out and then hand me the pipe. . . .

. . . .

Q. Okay. Did you smoke?

A. No, because I supposed to—he's trying to tell me if I wanted to taste it. Of course I wanted to taste it, but, like I say, when he come out—

. . . .

Q. Wait. What do you mean of course you wanted to take it? You wanted to smoke?

A. I don't know. But sometimes I don't like to be doing that kind because it's illegal, against the law.

. . . .

Q. Okay. So he took out the pipe. He smoked it.

A. He smoked it, yeah.

Q. Okay. And then he gave it to you?

A. He gave it to me because he was hurrying to come out and all of a sudden—

. . . .

Q. If you're saying that you don't smoke, that you know it's illegal, you don't want anything to do with it, why did . . . . I don't understand why you would take it from him and then put it in your pocket.

A. I never know, sir, Detective Struss, that it would be illegal and I will get arrested. But I will know it next time and I will never put anything like that in my pocket.

Q. Okay. So you didn't know it was illegal for you to have?

A. I didn't know.

Q. Is that what you're saying?

A. Yes, that pipe. I didn't know at all.

At trial, Locquiao denied making many of these statements to Detective Struss. Referring to the tape recording, he stated, "[T]hat is not my voice. I don't think that's my voice[.]"

At the trial, Locquiao testified that at 11:00 a.m. on January 19, 1999, he was approached by a man he had never met before. The man told Locquiao that he was going to demonstrate something to Locquiao in the Kalihi Cue bathroom. Locquiao and the man went into the bathroom. Locquiao locked the door. The man "pulled a glass material" and "try [sic] to demonstrate how to use things." The man said "he needed money." With a lighter, the man "start [sic] lighting it not more than five seconds." Locquiao "heard a click and someone just open [sic] the door." The man "handed [Locquiao] that one in my right hand[.]" Locquiao followed the man out of the bathroom "and put that glass material thing in [Locquiao's] right pocket." Kim then "snatch [sic] it out of [Locquiao's] pocket from the back[.]" Locquiao testified that he had "never seen an ice pipe before."

In this appeal, Locquiao notes that

in order to convict Mr. Locquiao of a "possession offense" the State was required to prove that [Locquiao] *knowingly* procured or received the "ice" pipe and its contents or that he was aware of his control of it for a sufficient period of time to have been able to terminate his possession of it.

*State v. Auwae,* 89 Hawai'i 59, 968 P.2d [1070] 1020 (App.1998)[.]

(Emphasis in original.)

Locquiao points out that

there was evidence to show that Mr. Locquiao did not know that the "glass material" handed to him by the other man was an ice pipe until afterwards, evidence which, if believed, would negative the intentional or knowing state of mind necessary for the State to prove that Mr. Locquiao committed the offenses of promoting dangerous drugs and possession of drug paraphernalia with intent to use it to ingest a controlled substance.

■ In his third point on appeal, Locquiao contends that the trial court reversibly erred when it refused to give the following instruction to the jury: "In any prosecution for an offense, it is a defense that the accused engaged in the prohibited conduct under ignorance or mistake of fact if the ignorance or mistake negatives the state of mind required to establish an element of the offense." In offering this instruction, defense counsel argued:

I believe there's some evidence on the record that Mr. Locquiao was mistaken as to whether or not the pipe was illegal. That's an honest mistake because the paraphernalia law is fairly recent. And also a paraphernalia is by definition an inanimate object all by itself, and there's no evidence, there's no evidence that he knew what was inside the pipe if anything.

■ We note that the HRS § 702–218(1) (1993) defense of ignorance or mistake of fact and the HRS § 702–220 (1993) defense of ignorance or mistake of law are different defenses. Clearly, there is no evidence in the record supporting an instruction regarding the affirmative defense of ignorance or mistake of law.[1]

1. Generally, ignorance of the law does not support an instruction regarding the defense of ignorance or mistake of law. Hawaii Revised Statutes § 702–220 (1993) states as follows:

**Ignorance or mistake of law; belief that conduct not legally prohibited.** In any prosecution, it shall be an affirmative defense that the defendant engaged in the conduct or caused the result alleged under the belief that the conduct or result was not legally prohibited when the defendant acts in reasonable reliance upon an official statement of the law, after-

ward determined to be invalid or erroneous, contained in:

(1) A statute or other enactment;

(2) A judicial decision, opinion, or judgment;

(3) An administrative order or administrative grant of permission; or

(4) An official interpretation of the public officer or body charged by law with responsibility for the interpretation, administration, or enforcement of the law defining the offense.

A "defense" asserted by Locquiao at trial was the "defense of ignorance or mistake of fact." There is evidence of Locquiao's mistake in thinking that it was no more than "glass material" and ignorance that the "glass material" was an "ice pipe" or that it contained an illegal drug.

Locquiao's testimony is evidence supporting the giving of an instruction on the defense of ignorance or mistake of fact. Under these circumstances, is Locquiao entitled to a new trial because the court failed to instruct the jury regarding the defense of ignorance or mistake of fact? The relevant precedent is as follows:

## II. STANDARDS OF REVIEW

### A. Jury Instructions

When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading.

Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.

Error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error may have contributed to conviction. If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.

State v. Gomes, 93 Hawai'i 13, 18, 995 P.2d 314, 319 (2000) (citations, internal quotation signals, and brackets omitted).

### B. Plain Error

"We may recognize plain error when the error committed affects substantial rights of the defendant." Gomes, 93 Hawai'i at 18, 995 P.2d at 319 (citing State v. Cullen, 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997)); see also Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) (1993) ("Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

. . . .

## III. DISCUSSION

### A. The Circuit Court's Jury Instructions Were Prejudicially Inconsistent and Misleading.

. . . .

Initially, we note that Culkin did not object to the instruction at trial. "Ordinarily, instructions to which no objection was made at trial may not be raised as error on appeal." State v. Pinero, 75 Haw. 282, 291, 859 P.2d 1369, 1374 (1993) (Pinero II); see Hawai'i Rules of Penal Procedure (HRPP) Rule 30(f). Where an erroneous instruction affected the substantial rights of a defendant, however, "we may notice the error as 'plain error' and remand for corrective action." Pinero II, 75 Haw. at 292, 859 P.2d at 1374 (citation and emphasis omitted).

Criminal defendants are entitled to jury instructions on every defense or theory of defense having any support in the evidence. State v. Agrabante, 73 Haw. 179, 196, 830 P.2d 492, 501 (1992) (quoting State v. O'Daniel, 62 Haw. 518, 527–28, 616 P.2d 1383, 1390 (1980)). The record contains evidence supporting Culkin's contention that he acted in self-defense when he stabbed Thomas. Accordingly, Culkin was entitled to self-defense jury instructions. Id.

. . . .

With respect to the adequacy of jury instructions, this court has explained:

The trial court is the sole source of all definitions and statements of law applicable to an issue to be resolved by the jury. Moreover, it is the duty of the circuit judge to see to it that the case goes to the jury in a clear and intelligent

manner, so that they may have a clear and correct understanding of what it is they are to decide, and he or she shall state to them fully the law applicable to the facts. And faced with inaccurate or incomplete instructions, the trial court has a duty to, with the aid of counsel, either correct the defective instructions or to otherwise incorporate [them] into its own instructions. In other words, the ultimate responsibility properly to instruct the jury lies with the circuit court and not with trial counsel.

*State v. Kinnane,* 79 Hawai'i 46, 50, 897 P.2d 973, 977 (1995) (citations, footnotes, internal quotation signals, and brackets omitted).

*State v. Culkin,* 97 Hawai'i 206, 213–15, 35 P.3d 233, 240–42 (2001) (internal brackets omitted).

■ *Culkin's* quote of *Agrabante* is incomplete. The complete quote is that a defendant "is entitled to an instruction on every defense or theory of defense having *any* support in the evidence, provided such evidence would support the consideration of that issue by the jury, no matter how weak, inconclusive or unsatisfactory the evidence may be." *Agrabante,* 73 Haw. at 196, 830 P.2d at 501 (emphasis in original; citation omitted).

In relevant part, jury instructions may pertain (1) to the offense charged by the State or (2) to the defendant's (a) defense or (b) affirmative defense. Situation (1) occurs, for example, when the jury is instructed that a material element of the charged offense is that the defendant engaged in the prohibited conduct intentionally or knowingly. Situation (2)(a) occurs, for example, where the defendant asserts the defense that he engaged in the prohibited conduct under ignorance or mistake of fact which negatives the intentional or knowing state of mind required to establish an element of the offense. We label such a defense as a "flip-side" defense. As noted in the commentary on HRS § 702–218(1),

> [t]his section states the logical concomitant of the requirement that to establish each element of an offense a certain state of mind with respect thereto must be proven.

Thus, if a person is ignorant or mistaken as to a matter of fact or law, the person's ignorance or mistake will, in appropriate circumstances, prevent the person from having the requisite culpability with respect to the fact ... as it actually exists.

In this case, the question is whether court's error in refusing to give the HRS § 702–218(1) flip-side "ignorance or mistake as a defense" instruction caused the instructions given to be prejudicially insufficient.

We note that the jury was instructed that Count I required proof beyond a reasonable doubt that Locquiao knowingly possessed methamphetamine and that Count II required proof beyond a reasonable doubt that Locquiao knowingly possessed drug paraphernalia with intent to use it to ingest, inhale, or otherwise introduce methamphetamine into his body. Consequently, if the jury believed Locquiao's testimony that he did not know that the "glass material" allegedly handed to him by the other man was an "ice pipe" or that it contained methamphetamine, the jury would have found that Locquiao did not "knowingly" possess methamphetamine and that he did not "knowingly" possess the "glass material" with the "intent" to use it to ingest, inhale, or otherwise introduce methamphetamine into his body and would have found him not guilty.

■ Examining the error in the light of the entire proceedings and giving the error the effect which the whole record shows it to be entitled, we decide that it affirmatively appears from the record as a whole that the court's error in refusing to give the flip-side defense instruction is harmless beyond a reasonable doubt. In other words, there is no reasonable possibility that the error might have contributed to the conviction. Thus, the instructions given were not prejudicially insufficient.

## CONCLUSION

Accordingly, we affirm the July 14, 2000 Judgment convicting Locquiao of Count I, Promoting a Dangerous Drug in the Third Degree, HRS § 712–1243 (Supp.2001), and

Count II, Unlawful Use of Drug Paraphernalia, HRS § 329–43.5(a) (1993).