**Dwight Perry KELLY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–98–0386–CR.**

Court of Appeals of Texas,
Amarillo.

March 1, 2000.

Rus Bailey, Amarillo, for appellant.

Rebecca King, Dist. Atty., Melinda Mayo, Asst. Dist. Atty., Amarillo, for appellee.

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

DON H. REAVIS, Justice.

Upon a plea of not guilty, appellant Dwight Perry Kelly was convicted by a jury of aggravated robbery, enhanced, and punishment was assessed at 99 years confinement. By three issues, appellant contends the trial court 1) abused its discretion in denying appellant's motion to recuse or disqualify the presiding judge; 2) committed reversible error in denying appellant's motion to suppress evidence of a suggestive pretrial identification procedure and an in-court identification of appellant; and 3) erred in overruling appellant's objection to impermissible jury summation by the prosecutor at the guilt-innocence phase. Based upon the rationale expressed herein, we affirm.

Because appellant does not challenge the sufficiency of the evidence, only the facts necessary to the disposition of this appeal will be discussed. Matthew Jackson, a sales associate at Payless Shoe Store, testified that on the evening of March 17, 1998, while no one else was present, appellant entered the store and asked to look at work boots. After determining appellant's shoe size, Jackson escorted him to the appropriate area of the store. Approximately ten minutes later, while Jackson was speaking to a co-worker on the telephone, appellant asked directions to the restroom. Shortly thereafter, appellant approached Jackson while he was still on the telephone and asked to look at more expensive shoes. Jackson escorted appellant to a back area stocked with more expensive work boots. After Jackson returned to the checkout counter area and resumed his phone conversation for a few more minutes, appellant approached the counter with merchandise. As Jackson began ringing up the sale, appellant brandished a gun and demanded the money from the cash register. Appellant also took Jackson's wallet and an undetermined amount of money from a safe. Jackson was forced to lay face down in the restroom while appellant fled. When Jackson felt it was safe to leave the restroom, he called 911. After the police arrived, Jackson described the person who committed the robbery as a black male, 20 to 30 years of age, six feet tall, with medium and athletic build.

## Motion to Recuse

By his first issue, appellant contends the trial court abused its discretion in denying appellant's motion to recuse or disqualify the presiding judge, Honorable Samuel Kiser, pursuant to Rule 18b(2) of the Texas Rules of Civil Procedure, Article I, sections 13 and 19 of the Texas Constitution, and the Due Process Clause of the United States Constitution. We disagree.

The factual basis of the alleged grounds to recuse or disqualify the presiding judge was unrelated to the facts and evidence supporting appellant's conviction for aggravated robbery. Following indictment and substitution of counsel, appellant filed his first motion to recuse the presiding judge, then subsequently filed his amended motion to recuse. As grounds for his motion, appellant alleged that three of five cases pending against him in the 181st District Court arose from alleged offenses committed on April 30, 1998, whereby appellant allegedly assaulted the court's bailiff and two sheriff's deputies in the courtroom and adjoining hallway. Among other things, appellant's motion alleged:

Immediately after this offense was alleged to have occurred, Judge Kiser was

present during a discussion, in his private foyer, of the alleged event with several witness [sic] and expressed concern over the safety of all those present in his courtroom during this alleged melee. Judge Kiser had the opportunity to observe the alleged witnesses demeanor immediately after the alleged incident. However, appellant did not allege in the trial court and does not contend on appeal that the presiding judge was disqualified because of prejudice based upon race, religion, or otherwise.

■■■ Relying on *Sun Exploration and Production Co. v. Jackson*, 783 S.W.2d 202, 206 (Tex.1989), appellant contends that disqualification or recusal was required under Rule 18b(2)(a) of the Texas Rules of Civil Procedure because Judge Kiser's "impartiality might reasonably be questioned." We review the denial of appellant's motion to disqualify only for abuse of discretion. Tex.R. Civ. P. 18a(f); *Kemp v. State*, 846 S.W.2d 289, 306 (Tex. Cr.App.1992), *cert. denied*, 508 U.S. 918, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993). We should not reverse the ruling of the judge assigned to hear the motion if the ruling on the motion was within the zone of reasonable disagreement. *Kemp*, 846 S.W.2d at 306; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Cr.App.1991) (on reh'g). Finally, in our analysis, we consider the totality of the evidence "elicited at the disqualification hearing...." *Kemp*, 846 S.W.2d at 306.

Before presentation of evidence on appellant's motion to the Honorable Ed Nobles, sitting by assignment, the State announced that Judge Kiser voluntarily agreed to recuse himself from the three cases arising out of alleged offenses committed in or near his courtroom on April 30, 1998, but not otherwise. Two attorneys present in or near the courtroom on that date testified to the events, but did not present evidence regarding any bias or prejudice by Judge Kiser against appellant. Judge Kiser testified that he felt no personal bias or prejudice toward appel-

lant which would affect his rulings in the aggravated robbery case. In applying the appropriate standard of review when considering the totality of the evidence presented at the hearing, we hold that Judge Nobles did not abuse his discretion in denying appellant's motion to recuse Judge Kiser. Appellant's first issue is overruled.

■■■ By his second issue, appellant contends the trial court committed reversible error in denying his motion to suppress evidence of a suggestive pretrial identification procedure and an in-court identification of appellant that was impermissibly tainted. We disagree. The Court of Criminal Appeals has held that the standard of review set forth in *Guzman v. State*, 955 S.W.2d 85 (Tex.Cr.App.1997) is applicable to review a trial court's ruling on a motion to suppress evidence based upon Fourth Amendment claims (*i.e.*, a claim that an in-court identification should not have been admitted because it was tainted by an impermissibly suggestive pretrial identification procedure). *Loserth v. State*, 963 S.W.2d 770, 771 (Tex.Cr.App. 1998).

■■■ The determination of the admissibility of an in-court identification requires a two-step analysis. *Loserth v. State*, 985 S.W.2d 536, 543 (Tex.App.—San Antonio 1998, pet. ref'd). First, we consider whether the pretrial photographic identification was impermissively suggestive, and if so, then we consider whether the procedure gave rise to a substantial likelihood of irreparable misidentification. *Loserth*, 963 S.W.2d at 771–72, citing *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).

At trial, approximately eight months following the robbery, a hearing was conducted outside the presence of the jury to determine the admissibility of a photographic lineup. Sergeant James McKenney testified that on the day after the robbery, he arranged a photographic lineup containing a total of five photographs of persons with similar characteristics, in-

cluding appellant's photo, and contacted Jackson to view the lineup. McKenney explained that the photographs were chosen from an "MO file" used for identification purposes to avoid a "strikingly different" photo from being used in an array. According to McKenney, the photos used in the lineup included jail placards containing identification information which were concealed by white strips of paper, then numbered one through five. Defense counsel argued that the photographic lineup was impermissibly suggestive because the numbers under the white strips of paper on appellant's photo were visible to the person viewing them and that "73 inches and 17–something in poundage," the information describing appellant, matched the description given by Jackson.

Outside the jury's presence Jackson testified he was contacted by someone at the police department on the day after the robbery to view a photographic lineup. According to Jackson, he was handed a stack of different Polaroid snapshots and asked to look at each one to determine if any of the persons depicted in the photos matched the description of the person who had robbed him. He testified he was instructed to "concentrate and look really hard" at the photos, but that no one suggested to him whom to select. Jackson selected photo number three, appellant's photo, and initialed and dated it on the back. At the conclusion of the testimony presented by Sergeant McKenney and Jackson the court announced that it was denying appellant's motion to exclude the photo lineup, the photographs, and the testimony regarding them.

Appellant contends the photographic lineup was impermissibly suggestive because (1) height and weight information similar to the description originally given by Jackson was visible under a white strip of paper placed over appellant's photo; (2) Sergeant McKenney asked Jackson to select a "suspect" from the lineup; and (3) Jackson was informed by the police after he selected appellant from the lineup that

appellant was the person the police were looking for.

■ On cross-examination, Jackson first testified he could not see the numbers underneath the white strips of paper and then clarified himself and added that at a certain angle he could see numbers, but not very clearly. Sergeant McKenney and Jackson both testified that Jackson was asked to pick a "suspect" from the lineup. However, a lineup is not rendered impermissibly suggestive merely because the complainant is informed that it contains a "suspect," because a complainant would "normally assume that to be the case." *See Harris v. State*, 827 S.W.2d 949, 959 (Tex.Cr.App.1992), *cert. denied*, 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992). Jackson also testified that after his pretrial identification of appellant, the police confirmed he was the person being sought for the crime. Although not proper for the police to have informed Jackson that appellant was the person police were looking for, the pretrial identification procedure was not rendered impermissible where no suggestive comments were made to Jackson prior to the lineup, and sufficient evidence exists that the in-court identification was of independent origin. *See Johnson v. State*, 466 S.W.2d 735, 736–37 (Tex.Cr.App. 1971).

■ After the jury returned, Jackson testified to the events on the night of the robbery and to his subsequent pretrial identification of appellant. Then, Jackson was asked to make an in-court identification of the person who robbed him. Jackson identified appellant without objection from the defense. In determining the reliability of Jackson's in-court identification under the totality of circumstances, we consider the following five non-exclusive factors:

1. the witness's opportunity to view the defendant;
2. the witness's degree of attention;
3. the accuracy of the witness's description;

4. the witness's level of certainty at the confrontation; and

5. the length of time between the offense and the confrontation.

See *Loserth*, 963 S.W.2d at 773, citing *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972).

Although Jackson spent most of the time appellant was in the store speaking with a co-worker on the telephone, he had four opportunities to observe appellant after he entered the shoe store. First, appellant asked Jackson about work boots. After appellant looked at shoes for approximately ten minutes, he approached Jackson a second time to inquire about the location of the restroom. During their third encounter, appellant asked Jackson about more expensive shoes, after which Jackson escorted him to another area of the store. Finally, Jackson testified he was within arm's reach of appellant when appellant approached the checkout counter with merchandise. Jackson was able to give police an accurate physical description of appellant. Although eight months had lapsed from the time of the robbery to the time of the in-court identification, Jackson identified appellant on the day after the robbery and had not seen his photo since that time. Based on the foregoing evidence, we conclude that the pretrial identification procedure did not give rise to a substantial likelihood of irreparable misidentification and that Jackson's in-court identification was not tainted by comments by police that appellant was the person being sought. Issue two is overruled.

 By his third issue, appellant contends the trial court erred in overruling his objection to the prosecutor's impermissible jury summation at the guilt-innocence phase by stating a personal opinion regarding the credibility of the complaining witness, essentially vouching for his credibility, thereby committing reversible error. We disagree. During summation, the prosecutor argued:

The best defense to anything, if you can do it, is to say, "Don't look at what we

got, but look at what we don't got." He [defense counsel] talks about misidentification. And you saw Matthew Jackson. And I tell you what, I put every bean I have got on Matthew Jackson.

Following the comment, defense counsel's objection that the statement was a prosecutorial opinion was overruled by the trial court and no request for an instruction or motion for mistrial was advanced by appellant.

 Proper jury argument is limited to four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) response to argument of opposing counsel; and (4) plea to law enforcement. *Long v. State*, 823 S.W.2d 259, 267 (Tex.Cr.App.1991), *cert. denied*, 505 U.S. 1224, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992). Reversible error results from improper jury argument only where, when examined in light of the entire record, the argument is extreme, manifestly improper, injects new and harmful facts into the case, or violates a mandatory statutory provision. *Hernandez v. State*, 819 S.W.2d 806, 820 (Tex.Cr.App.1991), *cert denied*, 504 U.S. 974, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992). Remarks of counsel must be considered within the context in which they appear. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex.Cr.App.1988).

The underlying premise of defense counsel's closing argument was that Jackson, "through inadvertence and error, and through impermissible suggestion," misidentified appellant as the person who robbed him. According to Jackson's testimony, appellant was the only customer in the store at the time of the robbery. Appellant initially approached Jackson to inquire about work boots and later about restroom facilities. Appellant then asked Jackson if he could view more expensive shoes. A fourth encounter occurred at the checkout counter where appellant committed the offense. Noting that the prosecutor's comments must be considered "within the context" in which they appear, we hold

that the argument complained of was a response to defense counsel's argument and a reasonable deduction of the evidence that Jackson's identification was accurate, and not an opinion regarding Jackson's veracity. *See Chapman v. State*, 503 S.W.2d 237, 238–39 (Tex.Cr.App.1974). Appellant's third issue is overruled.

Accordingly, the judgment of the trial court is affirmed.