IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 2156-01






CONSUELO FREEMAN, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRTEENTH COURT OF APPEALS


NUECES COUNTY






 Price, J., filed this dissenting opinion, in which Meyers and Johnson,
J.J., joined.


O P I N I O N 



 The appellant was charged with retaliation for threatening witnesses who were to
testify at her son's community supervision revocation hearing. The trial judge who
presided over the revocation hearing also presided over her trial and made several
comments on the record about his prior involvement in the case. (1) The appellant's trial
counsel did not file a motion to recuse the trial judge. On direct appeal, the Court of
Appeals held that trial counsel provided ineffective assistance of counsel in failing to file a
motion to recuse the trial judge. Freeman v. State, No. 13-98-587-CR (Tex.
App.--Corpus Christi Aug. 16, 2001) (not designated for publication). Today the Court
summarily concludes that the record does not support the Court of Appeals's decision. 
Because I believe that the record was adequate and that there was no reasonable trial
strategy for the attorney's failure to file a motion to recuse the trial judge in this case, I
dissent.

I. Facts


 During the appellant's son's community supervision revocation hearing, the trial
judge noticed that two witnesses seemed reluctant to testify against the appellant's son. 
The trial judge pulled the witnesses aside and questioned them about their reluctance to
testify. During the questioning, the witnesses said that the appellant threatened to retaliate
against them if they testified against her son. The trial judge notified the proper state
authorities who fully investigated matter. It is not clear from the record what, if any,
further disciplinary measures the trial judge took to prevent further disruption of the
revocation hearing. 

 On April 20, 1998, authorities arrested the appellant on a warrant alleging
retaliation. The warrant was issued by a judge other than the one who presided over the
revocation hearing. Later, the appellant was indicted. The appellant's bond was set at
$100,000, again by a different judge. The appellant completed an affidavit of indigency,
and trial counsel was appointed to her. At a pretrial hearing, in which the same trial judge
from the revocation hearing presided, the appellant's trial counsel discussed a motion to
request notice of intent to offer extraneous offenses and a motion for reconsideration of
bond reduction. No documentation regarding the appellant's financial situation was
presented to the trial court during this pretrial hearing to support the request for a bond
reduction. Although the transcript is devoid of any formal motion or order in that hearing,
the trial court states that the motion for a bond reduction was denied. The appellant did not
make bond. 

 The case was assigned to the trial judge who had presided over the appellant's son's
revocation hearing. During another pretrial hearing, the trial judge explained to the
appellant's counsel the sequence of events that led to the appellant's indictment. 

The Court: - well, let me tell you how it all started, if you want to know. Her
son was accused of, I think, assault.


Ms. Cable [State's attorney]: Robbery.


The Court: Robbery?


Ms. Cable: Robbery. And he had a Motion to Revoke alleging assault.


The Court: Okay. And there were two women involved who later refused to
testify. And I said: Well, I wonder why anybody got beat up that bad, to make
it a felony and wouldn't testify? So I asked that the women be brought up and,
according to them, they were forced or threatened not to testify. That's the
way it turned out. So that's what led to this Indictment.


Mr. George [Appellant's attorney]: To this Indictment?


The Court: Right. And we had a hearing after she was placed in the jail. I
don't know if I found her in contempt, but she kept interrupting the hearing, I
believe. And then there was a -- I don't show any psychological testing at all.


Mr. George: Okay.


The Court: And there may not have been one, but that's what led to this. And
then we had some testimony under oath by one or two of the women.


Ms. Cable: Two women.


The Court: Two women, testifying about the threats, and the father of one of
them.


Mr. George: Actually, that's the testimony that I was seeking, Your Honor.


The Court: All right.


Ms. Cable: That was within the Motion to Revoke [the appellant's son's
community supervision], Judge. 


 When the appellant requested a bond reduction or the option of house arrest, the
trial judge responded to the requests using his own knowledge of the facts gained from
prior interactions with the appellant, rather than using the arguments presented by the
appellant during the hearing. 

The Court: Well, you understand that here is a judge looking at a woman who
is accused of retaliation. And I get a letter dated May 20 - or at least that's
when we got it - and she speaks of how she's been harassed for 25 years. She
kept quiet, "but then this time I will speak out and defend me and my family." 

 I think this woman is going to go back to why she was placed in here. 
She was accused of going to the victim and saying: You better not testify
because here is what's going to happen to you. 

 I'm not saying you are guilty ma'am. I'm saying that that's what
they're saying. Now, a jury can otherwise say: You know what, Judge? They
are wrong; let this lady go. 

 But it's not up to me. I don't file charges, but I'm the one that
suspects that there was something wrong going on and, I think, halfway
approved it. Because when they came, he said: "I do want to testify, Judge,
but she's the one that threatened me not to testify."


 The trial judge made several references to a letter written by the appellant. The
handwritten letter, addressed to the judge who signed the appellant's bond order, was sent
by the appellant before she was represented by counsel. In that letter, she requested a bond
reduction and also complained of twenty-five years of police harassment. In her letter, the
appellant listed the names of judges, the Chief Investigator of the Nueces County District
Attorney's Office, and three Corpus Christi police officers, people whom she said had
harassed her. The trial judge made reference to these individuals and predicted on the
record that the city and county would have to deal continually with the appellant. The trial
judge mocked the appellant and her allegations. He predicted that the appellant would
continue to cause disruptions. 

The Court: And this [letter] speaks of some kinds of slander. I have a feeling
she is going to do something against the people who are going to be
testifying against her. She speaks of police harassment - all this stuff. But
Judge Harville? Somehow she is going to get Judge Harville involved. She's
always a bad - I don't know why thinks [sic] - Mr. Wade? I have a feeling this
lady is going to go- Leslie Pointer. Bill May. Ray Rivera. Lewenski - not
Monica. (General laughter) And Sgt. Starr - I have a feeling all these people
are going to have to put up with [the defendant]. I think she needs to be tried
and if she is not guilty she'll walk away and we may even apologize to her. 
But I don't think anything has changed. In fact, I think its worsened.


 As part of her pro se request for a bond reduction, the appellant told the judge that
"it w[ould] be nationwide news" and she hoped "their bonds . . . will be bigger than mine." In
large print across the top of the page, the words "slander case" appeared. The trial judge
who presided over the appellant's case made many references to this letter. 

 At the same hearing, the attorneys and trial judge discussed the appellant's mental
competency to stand trial. The trial judge and the State's attorney explained the situation to
the appellant's trial counsel.

 Mr. George [Appellant's attorney]: . . when I looked in the court file to try to
get updated on what had occurred, it looked like there might have been an
entry concerning some testing that was ordered.

 

 The Court: Testing? . . . Oh, psychiatric?

 

 Mr. George: Right.

 

 The Court: There could have been.

 

 Mr. George: And that was one of the questions, as to whether - you know,
I'm not sure whatever happened with that or if anything ever did.


 Ms. Cable [State's Attorney]: I don't think the Court ever ordered it - there
may have been some question of her not receiving some medication possibly
something like that in the jail. But I don't think there was [sic] psychiatric
ordered by the Court.

 No formal motion requesting a psychiatric evaluation was ever made. In addition to
the statements at the pretrial hearing, the appellant explained under the "employer" section
of her affidavit for indigency that she suffers from "mental disorder [sic] also anxiety
attacks, 2 bruis[illegible]." 

 The trial judge never offered to recuse himself nor did the trial judge ask the
appellant's counsel about a motion to recuse. The guilt phase of the appellant's trial
proceeded without further comments from the trial judge, but at the sentencing phase, the
trial judge stated that "[i]n fact, before even this defendant was charged, felt [sic] that there
was something going on as to why the witnesses were reluctant to testify. Then the court
heard evidence as to why. I agree with the State that the defendant should serve time." The
State asked for a maximum sentence of ten years confinement; the appellant's attorney
requested community supervision and assignment to a community supervision officer who
handled cases with mentally ill probationers. The trial judge sentenced the appellant to five
years' confinement with a $1,000 fine. 

 On direct appeal, the appellant complained that her counsel had been ineffective for
failing to file a motion to recuse the trial judge. The Court of Appeals held that, under the
unusual circumstances of this case, trial counsel's failure to move for to recuse the trial
judge was ineffective assistance as a matter of law because no objectively reasonable
strategy existed for his failing to do so. Freeman v. State, No. 13-98-587-CR, slip op. at
7. One justice dissented. He said that the majority made a good case for recusal of the
trial judge. He disagreed with the majority's conclusion that the there was no reasonable
trial strategy to support trial counsel's inaction. He suggested two reasons: (1) counsel
could have had confidence in the integrity of the trial judge and his ability to be fair; and (2)
counsel might have been concerned about the ability or temperament of a judge who might
be assigned to hear the case in the event that the motion was successful. Id. at 10-11.

 The State filed a petition for discretionary review, which we granted. (2) The State
argues that recusal in this case was inappropriate because the trial judge's pretrial
involvement did not create a reasonable doubt about his impartiality. The State also argues
that nothing in the record refutes the presumption that trial counsel possessed a reasonable
trial strategy in failing to seek recusal. The State does not challenge the Court of Appeals's
holding regarding the prejudice prong of the ineffective assistance of counsel analysis.

 The appellant responds that the comments made by the trial judge at the pretrial
hearing, the questioning of the witnesses by the trial judge before the State investigated the
matter, and the fact that the trial judge was a potential witness in the State's case gave trial
counsel more than adequate notice of the grounds for recusal. She also says that trial
counsel's failure to file a motion to recuse the trial judge fell below an objective standard
of reasonableness. 

II. Analysis


 In Strickland v. Washington, 466 U.S. 668, 694 (1984) the Supreme Court
articulated a two-prong test to be used when analyzing a claim of ineffective assistance of
counsel. To have her conviction reversed on the grounds of ineffective assistance of
counsel, an appellant has the burden of proving by a preponderance of the evidence that (1)
counsel's representation fell below an objective standard of reasonableness and (2) the
deficient performance prejudiced the appellant. Id. at 687. Unless the appellant makes
both showings, it cannot be said that her conviction is rendered unreliable by a breakdown
in the adversarial process. Ibid. In Hernandez v. State, this Court adopted the Strickland
two-prong test for criminal cases in Texas. Hernandez v. State,726 S.W.2d 53 (Tex. Crim.
App. 1986).

 Our review of counsel's performance must be highly deferential. Strickland, 466
U.S. at 690. There is a strong presumption that counsel's conduct falls within a wide range
of reasonable professional assistance, and the defendant must overcome the presumption 
Ibid. We determine the reasonableness of counsel's challenged conduct in context, and
view it as of the time of counsel's conduct. Ibid. 

 We have said that we commonly assume a strategic motive if any can be imagined;
and find counsel's performance deficient only if the conduct was so outrageous that no
competent attorney would have engaged in it. Bone v. State, 77 S.W.3d 828, 833 n.13
(Tex. Crim. App. 2002) (quoting Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App.
2001)). The policy behind this course is that "[i]ntensive scrutiny of counsel and rigid
requirements for acceptable assistance could dampen the ardor and impair the
independence of defense counsel, discourage the acceptance of assigned cases, and
undermine the trust between attorney and client." Strickland, 466 U.S. at 690. This
standard balances the protection of these important policy interests with the protection of
each defendant's fundamental Sixth Amendment rights. 

 As a result, we have said that the record on direct appeal is generally inadequate to
show that counsel's conduct fell below an objectively reasonable standard of performance,
and the better course is to pursue the claim in habeas proceedings. Bone, 77 S.W.3d at
833; Thompson, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

 In fact, the United States Supreme Court has said recently much the same thing in a
different context. In Massaro v. United States, 123 S. Ct. 1690 (2003), the Supreme
Court held that there is no procedural default for failure to raise an ineffective assistance
of counsel claim on direct appeal. Id., at 1693. Among the reasons for preferring that
these claims be brought in habeas proceedings, the Court said the trial record is not
developed precisely for the purpose of preserving and litigating these claims. As a result,
the Court said, the trial record is often incomplete and inadequate to resolve these claims. 
Id., at 1694.

 Even so, the Court did not hold that there claims must be brought in habeas
proceedings. But the Supreme Court also said that cases exist in which "counsel's
ineffectiveness is so apparent from the record that appellate counsel will consider it
advisable to raise the issue on direct appeal." Id., at 1696. The Court even noted that there
may be instances when an appellate Court will review it sua sponte. Ibid.

 When no reasonable trial strategy could justify the trial counsel's conduct, the
counsel's performance falls below an objective standard of reasonableness as a matter of
law, regardless of whether the record adequately reflects the trial counsel's subjective
reasons for acting as she did. Strickland, 466 U.S. at 690.

III. Application


A. Recusal


 First I will address the State's argument that recusal was not appropriate in this case. 
The State argues that recusal is not appropriate in this case because the trial judge's pretrial
involvement in the case did not create a reasonable doubt about his impartiality. (3) 

 The State cites the test found in Kemp v. State, 846 S.W.2d 289, 305 (Tex. Crim.
App. 1992). In Kemp, the trial judge issued an arrest warrant for the defendant and
presided over pretrial evidentiary hearings. This Court stated that "[t]he mere fact that a
trial judge issued a defendant's search or arrest warrant, alone, does not establish bias
against that defendant in a subsequent proceeding" because judges routinely performs these
duties. Id., at 306. We said that the test to establish bias is whether "a reasonable man,
knowing all the circumstances involved, would harbor doubts as to the impartiality of the
trial judge." Id., at 305. 

 The State cites other cases to support its argument that the appellant's situation was
not unique, and thus, that we should reverse the Court of Appeals's judgment. The State
cites Kelly v. State, 18 S.W.3d 239, 242 (Tex. App.--Amarillo 2000, no pet.), and 
Madden v. State, 911 S.W.2d 236, 241-42 (Tex. App.--Waco 1995, pet. ref'd). 

 In Kelly, the defendant appealed the denial of a motion to recuse the trial judge in
his aggravated robbery case. The defendant moved to recuse the judge because he had
overheard several witnesses discussing an unrelated assault by the defendant. The Court of
Appeals concluded that the factual basis for the grounds to recuse the trial judge were not
related to the facts and evidence supporting the conviction in the case. Kelly, 18 S.W.3d at
241.

 In Madden, the defendant argued that the trial judge should have disqualified herself 
because she had prosecuted him in another case before she became a judge. The Court
explained that the prohibition against a judge hearing a case in which she had been counsel
does not include prior cases having no relation to the case before the court. Madden, 911
S.W.2d at 240. 

 Kemp, Kelly, and Madden are distinguishable because the trial judges in those
cases presided over pretrial proceedings or proceedings in other cases that were unrelated
to the case before the trial court at the time. The State asserts that presiding over a prior
judicial hearing in which the defendant participated rarely establishes bias or prejudice. 
Although the proposition is correct, it is inapplicable in this case. 

 In the appellant's case, the trial judge did not simply preside over prior judicial
hearings or issue a warrant for her arrest. The trial judge presided over the appellant's son's
community supervision revocation hearing and interviewed, in private, two witnesses who
were reluctant to testify at the community supervision revocation hearing. The witnesses
told the judge that the appellant had threatened them to keep them from testifying. The
judge investigated the witnesses' allegations. The judge then informed the authorities, and
the appellant was indicted for retaliation. 

 Then, the same judge was assigned to the appellant's trial for retaliation. The trial
judge not only interviewed witnesses for the appellant's trial, but was himself a potential
witness for the State. These interactions go above and beyond the normal interactions of
judges and defendants resulting from prior judicial hearings.

 The appellant contends that her trial attorney should have filed a motion to recuse
the trial judge under Texas Rule of Civil Procedure 18a(a), which states, in part, that "any
party may file . . . a motion stating grounds why the judge before whom the case is pending
should not sit on the case. The grounds may include any disability of the judge to sit in the
case." In Arnold v. State, 853 S.W.2d 543, 544 (Tex. Crim. App. 1993), this Court made
Rule 18a applicable to criminal cases. Rule 18b(2) states that a judge shall recuse himself
in any proceeding in which:

 (a) his impartiality might reasonably be questioned;


 (b) he has a personal bias or prejudice concerning the subject matter or a
party, or personal knowledge of disputed evidentiary facts concerning the
proceeding; 


 (c) he or a lawyer with whom he previously practiced law has been a material
witness concerning it; [or]


 (d) he participated as counsel, advisor or material witness in the matter in
controversy, or expressed an opinion concerning the merits of it, while
acting as an attorney in government service[.]

 The record supports the conclusion that the trial judge in this case should have been
recused under Rule 18b(2)(a). His comments about initiating the proceedings against the
appellant, his comments in response to the appellant's request for bond, and his comments
about a letter the appellant wrote about alleged police harassment would cause a reasonable
person to doubt the trial judge's impartiality.

 The State argues that the trial judge consistently maintained that the appellant's guilt
would be determined by the jury. That may be true, but it does not change the doubts that
were raised about the judge's impartiality in light of the comments he made at the pretrial
hearing. His comments about being involved from the outset of the case and his mocking
the appellant in open court on the record undermine the State's claim that the trial judge
was impartial.

 The State also argues that the fact that the trial court gave the appellant a punishment
that was in the middle between the appellant's request and the State's recommendation
shows that the trial judge was impartial. But when the trial judge imposed the sentence in
this case, he, once again, stressed his personal involvement in the case. Moreover, we are
concerned with the time frame when trial counsel could have filed a motion to recuse. To
be timely filed, a motion to recuse must be filed at least ten days before trial. Tex. R. Civ.
P. 18a(a). There was ample evidence in the record to support a motion to recuse more than
ten days before the beginning of the appellant's trial.

 Because the trial judge in this case acted in such a way that would cause a reasonable
member of the public at large, knowing all the facts in the public domain concerning the
judge's conduct, to have a reasonable doubt that the judge was actually impartial, trial
counsel should have moved to recuse the judge. 

B. Ineffective Assistance of Counsel


 Next, the State claims that, even if the trial judge was subject to recusal in this case,
it does not follow that the appellant's trial counsel was ineffective. In support of this claim,
the State argues that (1) as with most ineffective assistance of counsel claims brought on
appeal, the record in the case is insufficient to overcome the presumption that trial counsel
acted within the range of reasonable professional assistance and (2) there are conceivable
reasonable trial strategies to support counsel's inaction. The appellant argues that there
was no reasonable trial strategy supporting trial counsel's inaction. I agree.

 In support of its arguments, the State cites one case from the Waco Court of
Appeals and cases from other jurisdictions. These cases are distinguishable on their facts.

 The State claims that Madden, 911 S.W.2d at 241, supports the proposition that the
decision not to file a motion to recuse is generally a matter of trial strategy that reviewing
courts should not second guess in a Strickland analysis. Counsel's decisions are always
accorded great deference in a Strickland analysis whether the conduct in question is related
to the filing of a motion to recuse or some other area of representation. As a general
proposition, I agree with the State that the decision to file a motion to recuse is one, like
many decisions counsel makes during the representation, that is entitled to great deference
from the trial court. If, however, the State is suggesting that trial counsel's actions in this
area is somehow immune from review, it is mistaken.

 As I explained above, Madden is distinguishable on its facts. The Court of Appeals
held that the trial judge was not subject to a motion to recuse, and, as a result, counsel
could not have been ineffective for failing to file the motion. Ibid.

 Similarly, United States v. Bayless, 201 F.3d 116 (2d Cir.), cert. denied, 529 U.S.
1061 (2000), does not support the State's position. In that case, the trial judge presided
over a pretrial suppression hearing in which he granted the defendant's motion to suppress
evidence. After receiving harsh publicity regarding his decision, he reopened the case and
admitted the evidence. Id., at 123-24. The defendant's trial counsel filed a motion to
recuse the judge. The appellate court stated that waiting for the trial judge to rule before
filing a motion to recuse is a waiver. Id., at 127. On the defendant's ineffective assistance
of counsel claim, the Second Circuit held that there had been no basis for trial counsel to
file a motion to recuse before the second hearing because the judge had ruled in the
defendant's favor on the initial motion to suppress. Id., at 130.

 In this particular case, the trial counsel never filed a motion to recuse, despite being
given ample notice of the trial judge's potential bias and prejudice. It was not part of the
trial counsel's strategy to see if the trial judge would treat the appellant fairly, then file a
motion to recuse. Trial counsel had ample reason, long before trial, to harbor doubts about
the trial judge's impartiality. In addition, the source of the trial judge's potential bias in
Bayless was not that the judge witnessed and took part in the events that led to the
defendant's indictment. The judge merely ruled on matters brought before him in the
course of the judicial process. Bayless does not support the State's position in this case. 

 Reliance on Butts v. State, 546 S.E.2d 472 (Ga. 2001), is equally misplaced. In that
case, the trial judge had presided over juvenile proceedings of the defendant and there was
nothing in the record to indicate that the trial judge was biased or prejudiced. Also, in
United States v. Ortiz Olivera, 717 F.2d 1, 4 n.** (1st Cir. 1983), the trial judge's only
interactions with the defendant were in prior hearings. In People v. Scott, 939 P.2d 354,
365 (Cal. 1997), the trial judge presided over proceedings regarding the mental state of the
defendant, and the California Supreme Court held that there was no evidence of bias or
prejudice. In Thompson v. State, 671 N.E.2d 1165, 1169 (Ind. 1996), the trial judge
presided over the defendant's prior criminal trials. 

 The only case cited by the State with facts even remotely similar to the facts of this
particular case is State v. Gomes, 995 P.2d 314 (Haw. 2000). In Gomes, the defendant
appealed his conviction for assault in the second degree, on the grounds that the trial judge
failed to recuse himself sua sponte. The defendant was on trial for assaulting a man while
surfing in the ocean. Before the defendant's trial began, the trial judge described an
incident in which he had met the appellant. 

 The trial judge, a fellow surfer, had met the defendant one morning while the two
were surfing. The defendant had become upset at the trial judge when the defendant felt that
the trial judge had gotten in his way couple of times. The trial judge stated that the
defendant: 

 got a little bit upset. He did start to berate me; I apologized, but the berating
continued. I think that even Mr. Gomes will admit that there was an air of
physical menace there. But after things calmed down, he kind of paddled off
and sat by himself. . . . And he did apologize, come over, shake my hand, and
we had a nice conversation after that. That was my only contact with Mr.
Gomes. It's quite ambivalent, and I can assure counsel and Mr. Gomes that I
bear no grudge. I have no opinion, no impression, and I can be fair and
impartial.

Id., at 316. The trial judge then went on to mention that he had already had a discussion with
counsel regarding this matter off the record in his chambers before going on record. The
judge said that he would entertain any motions for recusal at that point, and the defendant
declined to file or request recusal. The trial judge told the defendant directly that he would
be sentencing the defendant, and the defendant stated that he understood that. Still no
motion to recuse was filed, and the trial judge asked the defendant directly if he was sure. 
The defendant said yes. The trial proceeded, the defendant was found guilty, and the trial
judge sentenced the defendant to five years probation. Ibid. 

 On appeal, the defendant argued that the trial judge should have recused himself, sua
sponte, based on an appearance of impropriety. The defendant failed to allege that the trial
judge was actually biased but argued that the appearance of impropriety was sufficient to
warrant a recusal. He also did not claim that his trial counsel was ineffective for failing to
file a motion to recuse. The Supreme Court of Hawai'i held that the trial judge did not err
in failing to recuse himself sua sponte. Id., at 321. In the case before this Court, the
appellant alleged ineffective assistance of counsel for her trial counsel's failure to file a
motion to recuse the trial judge. The appellant never alleges that the trial judge should have
recused himself sua sponte. 

 It is important to note that the Hawai'i Supreme Court discussed in a footnote the
defendant's decision not to file a motion to recuse. In dicta, the Hawai'i Supreme Court
stated that "whether to file a motion to disqualify a judge is a strategic decision that is
generally left to defense counsel. . . . In the present matter, [the trial judge] expressly
offered both Gomes and his counsel the opportunity to interpose a motion to recuse. 
Gomes and his counsel declined to do so. We will not second guess that strategy on
appeal." Id., at 321 n.5. 

 The Gomes case is not controlling or even persuasive on the facts of the appellant's
case. In the appellant's case, no such dialogue between the judge, her trial counsel, and the
appellant herself ever took place. When determining the merits of an ineffective assistance
of counsel claim, the reviewing court must look at all the facts of the particular case. The
facts of this particular case are not similar enough to the facts found in the Gomes case, and
thus the analysis is not the same.

 In this case, the appellant did not come before the trial judge in prior judicial
proceedings as a party or a defendant. The trial judge was the one who, in his own words,
"suspect[ed] that there was something wrong going on and, . . . halfway approved [the
State's pursuit of charges against the appellant]." The trial judge initiated an investigation
into the allegations of retaliation and was a potential witness for the State. A trial judge
who simply reads a transcript of previous events would not have the same kind of intimate
knowledge of the underlying facts as the trial judge in the appellant's case had. No other
judge had participated in the events that were the basis for the offense for which the
appellant was being tried. The trial judge in appellant's case had an extra-judicial
relationship with the appellant.

 The State and the dissenting Justice from the Court of Appeals have provided what
they believe to be conceivable trial strategies in an attempt to explain trial counsel's
inaction. Freeman v. State, No. 13-98-587-CR, slip op. at 2-3 (Hill, J., dissenting). The
reasons given include: (1) counsel had great confidence in the trial judge's ability to hear
the case fairly; (2) counsel may have been worried about alienating the trial judge if the
motion was unsuccessful; (3) counsel may have been concerned about the ability or
temperament of a judge who would hear the case if the motion was successful; and (4) trial
counsel may have wanted to avoid further delay. These general considerations are not
reasonable trial strategies based on the record before us.

 First, the State and the dissenting Justice from the Court of Appeals suggested that
counsel may have had great confidence in the trial judge's ability to hear the case fairly. 
Whatever counsel's opinions may have been before, counsel should have had grave doubts
about the trial judge's ability to hear the case fairly after hearing the comments made on the
record in open court by the judge. 

 Looking at the record from the pretrial hearing, the trial judge made his prejudice
against the appellant obvious. Although the trial judge told the appellant that it was not his
job to find her guilty, he also made several negative comments directed towards the
appellant, such as "[s]he's always a bad." When a trial judge states on record his frustration
with the appellant from his prior experiences with her and anticipates that she will continue
to be a nuisance to the court, he has affirmatively demonstrated that he has not put aside his
bias or prejudice. In this situation, reason leaves no room for a trial strategy that assumes
the trial judge will be able to put aside his bias or prejudice.

 Second, if trial counsel had been concerned about alienating the trial judge in the
event the motion was unsuccessful, he would have had plenty of support for a reversal on
appeal from this record. This is not a legitimate reason to fail to pursue a motion to rescue. 
The motion to recuse is to protect the client's right to a fair trial. This should be paramount
to other considerations. The appellant was adamant about her innocence and concerned
about how she would prove her case in court, even offering to take a lie detector test. It is
not reasonable for an attorney to choose efficiency in the trial proceedings rather than
ensuring that his client receives a fair trial, especially when the client is so adamant about
her innocence. 

 Third, even if trial counsel had been concerned about the ability or temperament of a
judge who would be likely to hear the case in the event the motion was successful, the stark
fact remains that no other judge would have had the same first-hand knowledge of this
particular case that this trial judge had. The difference between learning about the
appellant's actions from reading transcripts of prior proceedings, and being the judge who
questioned witnesses, who reported the appellant's threats to the proper authority, and who
was a potential witness himself, is too great for reason to ignore. 

 Fourth, concerns about potential delay are not outweighed in this case by the
concern about a trial judge with intimate knowledge of the facts of the case who had strong
opinions about the appellant's guilt and who mocked her on the record in open court. 

 Generally speaking, there are a myriad of reasons why trial counsel might choose
not to file a motion for recusal in any given case. But in this particular case, there is no
reasonable explanation for the trial counsel's decision. As the State has reminded this
Court in its brief, "any one particular decision that trial counsel makes during the course of
his representation should generally not be viewed in a vacuum . . . " In light of the facts
known to the trial counsel at the time he failed to file a motion for recusal, which are
plainly stated in the record from the pretrial hearing, his conduct fell below an objective
standard of reasonableness. 

 The trial record in this case provides sufficient evidence to support the Court of
Appeals's conclusion that the appellant's trial counsel's performance was deficient. The
record shows by a preponderance of the evidence that the trial counsel's conduct fell below
an objective standard of reasonableness. No reasonable trial strategy could justify trial
counsel's failure to file a motion for recusal in this particular case. I would affirm the
Court of Appeals's judgment. Because the Court does not, I dissent.


Filed: November 5, 2003.

Publish.

1. The trial judge who presided over the appellant's case no longer presides over the 347th
District Court in Nueces County.
2. The exact ground on which we granted review is: "Did the Court of Appeals err when it
effectively held that the failure to seek recusal of the trial judge was per se ineffective assistance of
counsel as a matter of law, in conflict with the dissenting opinion, with another court of appeals, and on
an important question of state and federal law that has not been, but should be decided by the Court of
Criminal Appeals?
3. The State does not challenge the Court of Appeals's holding that the trial judge was also
subject to a motion to recuse because he was a potential witness in the case. See Tex. R. Civ. P.
18b(2)(b); Freeman, No. 13-98-587-CR, slip op. at 7.