IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00387-CR

 

Aaron Zane Somers,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the 272nd District Court

Brazos County, Texas

Trial Court No. 08-00910-CRF-272

 



O p i n i o n










 

            Aaron Zane Somers was convicted of
intoxication manslaughter.  See Tex.
Penal Code Ann. 49.08 (Vernon Supp. 2010).  The jury assessed his
punishment at twelve years in prison and a fine of $8,000.  We affirm. 

Background Facts

            As social chairman for his fraternity,
Somers planned a “jungle theme” party.  The police responded to a noise
complaint at the fraternity house at 11:45 p.m. on the night of the party. 
Somers spoke to the police and informed the officers that he was in charge and
to direct any further complaints to him.  Police determined that Somers was
slightly intoxicated at that time, but did not detain or question him.  Police
returned to the fraternity house at 2:00 a.m. again in response to a noise
complaint.  At that time, Somers agreed to shut down the band.  The police found
Somers to be more intoxicated than at the previous encounter.  Police returned
at 2:30 a.m. to end the party, but did not see or speak to Somers at that time.


            A police officer who responded to the
noise complaint at the fraternity house was later called to the scene of a
major accident at 3:24 a.m.  The officer recognized Somers at the scene.  Somers
was still wearing his costume from the fraternity party.  Somers told the
officer that he was not driving the overturned pickup, but he did not know how
he got on the highway.  The pickup was registered to Somers’s mother.  Based
upon witnesses and evidence at the scene, the officer believed Somers was
driving the pickup at the time of the accident.  The officer performed field
sobriety tests on Somers and then placed him under arrest for driving while
intoxicated.    

            Michelle Briggs was the sole occupant
of the vehicle struck by Somers’s pickup.  She was taken by ambulance to the
hospital where she later died.  

Drug Use

            Somers brings three issues on appeal
relating to the drug use of the victim, Michelle Briggs.  The trial court held
a hearing during trial on the admissibility of Michelle’s drug use.  Somers
sought to admit evidence of Michelle’s positive drug test, statements Michelle
made three days before the accident, and crack pipes found in Michelle’s purse
at the scene of the accident.  

 

Drug Test Evidence

Somers first argues that the State misled the
trial court and trial counsel by the Department of Public Safety withholding
the true results of Michelle’s drug tests.  The DPS crime lab performed drug
analysis of Michelle’s blood.  DPS performed an enzyme-multiplied immunoassay
technique, which is a screening test for classes of drugs.  DPS tested
Michelle’s blood for six different classes of drugs with the EMIT test.  The
test was positive for benzoylecgonine, called cocaine and its metabolites
class.  It was also positive for the amphetamine class.  EMIT test results are
used as a screening device and are not reliable without a confirmation test.  

A forensic scientist at DPS testified that she
conducted a gas chromatograph test on Michelle’s blood as a confirmation test. 
The test was negative for cocaine and the two metabolites in cocaine.  Because
the confirmation test was negative, DPS could not testify that there was
cocaine present in Michelle’s blood.  The DPS scientist testified that
Michelle’s blood sample did not contain the usual preservative.  Cocaine breaks
down quickly in the blood and the GC test was done almost a year after the EMIT
test.  The DPS scientist stated that negative confirmation GC test could have
been caused by the lack of preservative in the blood sample.  However, because
the confirmation test was negative, DPS could not report a positive cocaine
finding based solely upon the EMIT test.  The trial court excluded the EMIT
test results.  

Somers specifically argues in his first issue on
appeal that the State failed to disclose favorable evidence that the GC test
was not in conflict with the EMIT test in violation of Brady v. Maryland,
373 U.S. 83 (1963).  The suppression by the prosecution of evidence favorable
to an accused upon request violates due process where the evidence is material
either to guilt or to punishment, irrespective of the good faith or bad faith
of the prosecution.  Brady v. Maryland, 373 U.S. at 87.  Evidence is
material if there is a reasonable probability that, had the evidence been
disclosed to the defense, the outcome of the proceedings would have been
different.  United States v. Bagley, 473 U.S. 667, 682  (1985). 
Prosecutors have a duty to learn of any evidence favorable to the defense that
is known to others acting on the government's behalf in the case, including the
police.  Kyles v. Whitley, 514 U.S. 419, 437 (1995).  Under Brady,
the defendant bears the burden of showing that, in light of all the evidence,
it is reasonably probable that the outcome of the trial would have been
different had the prosecutor made a timely disclosure.  Webb v. State,
232 S.W.3d 109, 115 (Tex. Crim. App. 2007).  

Rod McCutcheon, chief toxicologist and medical
examiner for Bexar County who also serves as a private consultant, testified on
Somers’s behalf at the motion for new trial.  McCutcheon stated that he
reviewed the DPS materials provided relating to Michelle’s drug tests results.  McCutcheon
testified that the DPS analysis shows a small amount of cocaine present in the
sample but that it was reported as negative because it was not enough to meet
the acceptance criteria to be considered as a positive result.  McCutcheon
testified that cocaine is easily degraded and needs a preservative.  Because
the GC test was conducted almost a year after the EMIT test, McCutcheon does
not feel the results are inconsistent.  

McCutcheon’s testimony was based upon DPS material
provided to Somers’s counsel before trial.  McCutcheon testified that although
the GC test indicated trace amounts of cocaine, he would not report it as
positive because it did not meet the acceptance criteria.  

The record does not support Somers’s argument that
the State withheld the true results of Michelle’s blood tests in violation of Brady. 
The State provided Somers with the DPS analysis prior to trial.  There is no
dispute that the records provided indicate a trace amount of cocaine.  The DPS
scientist testified that there was no “analite” present.  McCutcheon stated in
reference to that testimony “I would like to know what she meant by that.  I
don’t really know if she meant there is not even a trace indicated in the
record or there is not a trace that we could report that met the criteria.” 
McCutcheon acknowledged that the trace amount was not enough to be reported as
positive.  The DPS scientists agreed with McCutcheon’s testimony that the
failure to properly preserve the blood sample could have contributed to the
negative GC test.  We do not find that the State withheld material evidence or
misled trial counsel and the trial court.  We overrule Somers’s first issue on
appeal.  

Exclusion of Evidence 

Somers next argues that the trial court erred in
excluding Michelle’s EMIT and GC drug test results and Michelle’s statements to
her employer.  Somers intended to present evidence that Michelle was a habitual
cocaine user and likely died from a heart attack prior to the collision.  When
reviewing a trial court's ruling on the admission of evidence, we apply an
abuse of discretion standard of review.  Casey v. State, 215 S.W.3d 870,
879 (Tex. Crim. App. 2007).  A trial court abuses its discretion when its
decision lies outside the zone of reasonable disagreement.  Id.

Somers sought to introduce the EMIT and GC test
results to show Michelle was using cocaine at the time of the accident.  As
previously discussed, the EMIT test was positive for cocaine, but the
confirmation GC test was negative.  EMIT test results are not reliable without
a positive confirmation test.  The trial court did not abuse its discretion in
excluding the test results.

Somers also sought to introduce Michelle’s
statements to her employer as statements against interest.  Tex. R. Evid. 803(24).  Three days
prior to the accident, Michelle was given a drug test at her place of employment
because she appeared “high.”  The drug test was positive for cocaine,
amphetamines, and methamphetamines.  Michelle stated “whatever” when told she
was being terminated due to the positive drug test.  

A statement against interest is an exception to
the hearsay rule and is:

            A statement which was at the time of
its making so far contrary to the declarant’s pecuniary or proprietary
interest, or so far tended to subject the declarant to civil or criminal
liability, or to render invalid a claim by the declarant against another, or to
make the declarant an object of hatred, ridicule, or disgrace, that a
reasonable person in declarant’s position would not have made the statement
unless believing it to be true.  In criminal cases, a statement tending to
expose the declarant to criminal liability is not admissible unless
corroborating circumstances clearly indicate the trustworthiness of the
statement. 

 

Tex. R. Evid. 803(24).  Michelle’s statement of “whatever” in
response to termination for failing a drug test was not an admission of drug
use.  The trial court did not abuse its discretion in refusing to admit the
statement as a statement against interest.  We overrule Somers’s second and
third issues.

 

Autopsy Report

Somers next argues that the trial court erred in
admitting the autopsy report through the treating physician at the emergency
room rather than the medical examiner who performed the autopsy.  The trial
court admitted the autopsy report over Somers’s   objection based upon the
Sixth Amendment confrontation clause.  Somers also received a running objection
“to any references that Dr. Alford may make to the autopsy.”  Somers claims
that the autopsy report is the only evidence that conclusively states that
Michelle died of blunt force injuries and that he was unable to cross-examine
the medical examiner who prepared the report in violation of Crawford v.
Washington, 541 U.S. 36 (2004).

Dr. Richard D. Alford testified that he treated
Michelle at the emergency room and that she had air and blood in her chest as a
result of blunt trauma.  Michelle also had a tear in her liver from blunt force
injury.  Dr. Alford further testified that a CAT scan of Michelle’s brain
revealed that she suffered a severe head injury and possible spinal cord
injury.  Dr. Alford testified without objection that her cause of death was
multiple trauma, head injury, and spinal cord injury.      

Any error in the admission of evidence is cured
when the same evidence comes in elsewhere without objection.  Lane v. State,
151 S.W.3d 188, 193 (Tex. Crim. App. 2004).  Somers objected to the admission
of the autopsy report and to any reference to the autopsy.  Dr. Alford
testified to the cause of death as her treating physician without reference to
the autopsy report.  We overrule the fourth issue.

 

Identity of the Driver

Somers next argues that he received ineffective
assistance of counsel because his trial counsel failed to adequately
investigate the possibility that someone other than Somers was driving the
vehicle that struck Michelle.  Somers also argues that the possibility of
another driver is newly discovered evidence which would bring about a different
result.  

Facts 

William Duvall was a passenger in a pickup
traveling near the scene of the accident.  Duvall observed a pickup behind him
swerving.  After the pickup he was in turned, Duvall heard a crash.  They
turned around and went to the scene, arriving  30 to 60 seconds after hearing
the collision.  Duvall saw appellant on his knees near the overturned pickup.  

Duvall gave a statement to police that was
provided to trial counsel prior to trial.  Trial counsel had a member of his
staff prepare a transcript of the interview.  Trial counsel also had an
investigator interview Duvall and that interview was also transcribed. 

Somers’s trial counsel testified at the motion for
new trial that he mistakenly believed Duvall said that a person approached the
scene on foot and told Somers not to say anything to police.  After reviewing
the State’s transcripts, trial counsel now understands the person approached on
foot and told Duvall not to call the police or speak to police.  Somers argues
that that person could have been the driver of the pickup that struck Michelle.


Ineffective Assistance of Counsel 

To determine if trial counsel rendered ineffective
assistance, we must first determine whether Somers has shown that counsel's
representation fell below an objective standard of reasonableness and, if so,
then determine whether there is a reasonable probability that the result would
have been different but for counsel's errors.  Strickland v. Washington,
466 U.S. 668, (1984).  We must indulge a strong presumption that counsel's
conduct fell within the wide range of reasonable professional assistance, and
Somers must overcome the presumption that, under the circumstances, the
challenged action might be considered sound trial strategy.  Stafford v.
State, 813 S.W.2d 503, 508-09 (Tex. Crim. App. 1991).  An allegation of
ineffective assistance must be firmly founded in the record, and the record
must affirmatively demonstrate the alleged ineffectiveness.  Thompson v.
State, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

            Somers’s trial counsel reviewed
Duvall’s interviews prior to trial.  Trial counsel questioned Duvall at trial
whether he told police there might have been another driver.  Duvall
consistently stated that he did not see anyone flee the scene of the accident
and that he saw appellant crawling out of the overturned pickup.  Somers has
not shown that his trial counsel was ineffective in failing to investigate the
possibility of another driver. 

Newly Discovered Evidence

             To obtain a new trial upon newly discovered evidence, the following
elements are required:  (1) the newly discovered evidence was unknown to the
movant at the time of trial; (2) the movant's failure to discover the evidence
was not due to his want of diligence; (3) the evidence is admissible and not
merely cumulative, corroborative, collateral or impeaching; and (4) the
evidence is probably true and would probably bring about a different result in
another trial.  Wallace v. State, 106 S.W.3d 103, 108 (Tex. Crim. App.
2003).

            The State provided Somers with a copy of Duvall’s statement prior to
trial and Somers’s investigator interviewed Duvall.  Somers’s trial counsel
reviewed these statements prior to trial.  The evidence was available to Somers
at the time of trial.  We overrule the fifth and sixth issues.

Argument on Punishment

            Somers contends that the State made an
improper argument during the punishment phase concerning application of the
parole law.  Somers further complains that the trial court abused its
discretion when it quashed subpoenas and declined to consider the juror’s affidavits
discussing the effect of the State’s argument.

Argument

            During his argument on punishment, Somers’s trial counsel explained
the effect of parole laws on the sentence and detailing when Somers would be
eligible for parole.  The State then responded without objection that Somers
faced a maximum sentence of 20 years and that he would be eligible for parole
in 10 years.  The State noted that Somers might not receive parole at that
time.  The State later argued that

Now on these facts, with his history, you would
certainly be within your rights to go back in this jury room and return the
maximum sentence.  That is a lot of time.  He’ll do ten years of that.  He’ll
be a young man when he gets out.

 

Somers objected that it was unknown if he would
receive parole at that time.  The trial court overruled the objection.

            Error results from improper jury
argument only if, examined in light of the entire record, the argument is
extreme, is manifestly improper, injects new and harmful facts into the case,
or violates a mandatory statutory provision.  Brantley v. State, 48
S.W.3d 318, 330 (Tex. App.—Waco 2001, pet. den’d); Kelly v. State, 18
S.W.3d 239, 244 (Tex. App.—Amarillo 2000, no pet.).  The State initially
correctly stated that Somers would be eligible for parole after serving half of
his sentence, but that he might not receive parole at that time.  The argument
was not extreme or manifestly improper, and we find no reversible error.

Juror Subpoenas

            A defendant must be granted a new
trial when the jury has engaged in such misconduct that the defendant did not
receive a fair and impartial trial.  Tex.
R. App. P. 21.3(g).  The Rules of Evidence provide:

            Upon an inquiry into the validity of a verdict or indictment, a juror
may not testify as to any matter or statement occurring during the jury’s
deliberations, or to the effect of anything on any juror’s mind or emotions or
mental processes, as influencing any juror’s assent to or dissent from the
verdict or indictment.  Nor may a juror’s affidavit or any statement by a juror
concerning any matter about which the juror would be precluded from testifying
be admitted in evidence for any of these purposes.  However, a juror may
testify: (1) whether any outside influence was improperly brought to bear upon
any juror; or (2) to rebut a claim that the juror was not qualified to serve.

 

Tex. R. Evid. 606(b).  If a defendant seeks to show jury
misconduct under Tex. R. App. P.
21.3(g) by juror testimony or affidavit, Rule 606(b) requires that the
testimony illustrate either the existence of an outside influence or a rebuttal
of a claim that a juror was not qualified.  See Hart v. State, 15 S.W.3d
117, 124 (Tex. App.—Texarkana 2000, pet. den’d).  Somers intended to show
through the affidavits and juror testimony the effect the State’s argument had
on the application of the parole laws during their deliberations.  Jury
deliberations considering the effects of parole are not an outside influence
and any testimony or affidavit is not admissible under Rule 606(b).  See
Hines v. State, 3 S.W.3d 618, 623 (Tex. App.—Texarkana 1999, no pet.).  The
trial court did not err in quashing the jurors’s subpoenas.  We overrule the
seventh and eighth issues.

Blood Alcohol Evidence

            Somers brings three issues on appeal challenging the trial court’s
admission of his blood alcohol evidence in violation of the United States
Constitution, the Texas Constitution, and Texas Code of Criminal Procedure. 
Somers filed a motion to suppress the evidence, and the trial court held a
hearing on the motion.  We have previously set out the standard of review for a
motion to suppress, and we will use that standard, with additional law specific
to Somers's issue, to determine whether the trial court erred.  See  Brown
v. State, 115 S.W.3d 633, 635-37 (Tex. App.—Waco 2003, no pet.).  

A peace officer shall require the taking of a
specimen of a person’s breath or blood if the officer arrests the person for an
offense under Chapter 49 of the Penal Code involving the operation of a motor
vehicle and the person refuses the officer’s request to submit to the taking of
the specimen voluntarily.  Tex. Transp. Code
Ann. § 724.012(b) (Vernon Pamph. Supp. 2010).  Section 724.012(b)
further requires, in pertinent part, that the person was the operator of a
motor vehicle in an accident that the officer reasonably believes occurred as a
result of the offense and, at the time of the arrest, the officer reasonably
believes that as a direct result of the accident any individual has died or
will die. 

            Officer Richard Benton Keough testified
at the hearing on Somers's motion to suppress.  Officer Keough placed Somers
under arrest for driving while intoxicated after conducting field sobriety
tests and observing Somers.  Somers refused consent to provide a blood
specimen, and Officer Keough obtained the sample pursuant to Tex. Transp. Code Ann § 724.012(b)
(Vernon Pamph. Supp. 2010).  Somers had a blood alcohol level of .30. 

 Somers does not dispute Officer Keough’s
determination that he was intoxicated, nor does he dispute that Officer Keough
reasonably believed Michelle would die as a result of the accident.  Somers
contends that because there is no evidence that he operated the motor vehicle,
there was no probable cause for his arrest and the officer did not have
authority to take his blood without consent.  

            Officer Keough spoke with Duvall at
the scene, and Duvall informed him that he had witnessed Somers crawling out of
the pickup involved in the accident.  Duvall stated that he did not see anyone
else get out of the pickup.  Officer Keough observed bruising injuries on
Somers’s left shoulder consistent with the driver’s side seatbelt.  Somers told
Officer Keough that he was not driving the pickup involved in the accident and
that he did not know if it was his pickup.  Officer Keough confirmed that the
pickup belonged to Somers’s mother.  

            Officer Keough had probable cause to
believe that Somers was driving the vehicle and committed the offense of
driving while intoxicated.  Officer Keough was authorized to take Somers's
blood specimen pursuant to Tex. Transp.
Code Ann. § 724.012(b) (Vernon Pamph. Supp. 2010).  The trial court did
not err in denying Somers’s motion to suppress and in admitting the blood
alcohol evidence.  We overrule issues nine, ten, and eleven.

Ineffective Assistance of
Counsel

Somers argues in two issues that he received
ineffective assistance of counsel because his trial counsel failed to move for
a directed verdict at the close of the State’s case.  We have previously set
out the standard of review for ineffective assistance of counsel.  

A motion for a directed verdict is a challenge to
the legal sufficiency of the evidence.  Williams v. State, 937 S.W.2d
479 (Tex. Crim. App. 2007).  In reviewing the legal sufficiency of the
evidence, we look at all of the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Bigon v. State, 252 S.W.3d 360,
366 (Tex. Crim. App. 2008).

Somers first argues that there was no evidence
that he was driving the vehicle that struck Michelle’s vehicle.  As discussed
in the previous issues, we find that Officer Keough had probable cause to
believe Somers was driving the vehicle.  There was additional evidence to
support the finding that Somers was driving.  Somers was not wearing a shirt at
the time of the accident, and he had red paint on his chest and back as part of
his costume for the jungle party.  The red paint on Somers’s back was smeared.
The pickup had red paint on the driver’s side seat.  There was no red paint
other than on the driver’s side of the pickup.  The record shows that the
driver’s side air bag was activated, but not the passenger side air bag.  

One witness at the scene observed Somers come from
the driver’s side of the pickup.  Duvall saw Somers crawl from the pickup after
the accident.  Neither witness saw anyone else exit the pickup or flee from the
scene.  The evidence is sufficient to show that Somers was driving the vehicle.

Somers next argues that the evidence was legally
insufficient to prove that Somers caused the death of Michelle.  Michelle’s
vehicle was stopped on the side of the road with the headlights on and the
flashers activated.  The car was in drive at the time of the accident, but not
moving.  Michelle’s vehicle was on the shoulder of the road, approximately six
inches into the roadway.  The pickup was “straddling” the line and was two and
one half to three feet onto the shoulder at the time of the collision.  The
pickup was driving approximately sixty miles per hour at impact.  

            Somers contends that Michelle died
before the accident occurred.  Dr. Alford detailed the injuries Michelle
received as a result of the collision and testified that Michelle’s cause of
death was multiple trauma, head injury, and spinal cord injury.  

            The record before us does not support
Somers’s argument that his trial counsel was ineffective in failing to move for
a directed verdict.  We overrule the twelfth and thirteenth issues. 

 

Conclusion

            We affirm the trial court’s judgment.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before Chief Justice
Gray,

            Justice
Reyna, and

            Justice Davis

            (Justice
Reyna dissenting)

Affirmed

Opinion delivered and
filed November 24, 2010

Publish 

[CR25]